877 A.2d 267 (2005)
379 N.J. Super. 100
Louis SICKLES, Plaintiff-Respondent,
v.
CABOT CORPORATION, Phelps Dodge Corporation, Columbian Chemicals Company, Degussa Engineered Carbons, LP, Degussa AG, and Degussa Corporation, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted June 8, 2005.
Decided July 7, 2005.
*268 Brown and Connery and Jennifer L. Merzon (Jones Day) of the Washington DC bar, admitted pro hac vice, attorneys for appellant Cabot Corporation (Michael J. Vassalotti and Ms. Merzon, Westmont, on the joint brief).
Dechert and Gary W. Kubek (Debevoise & Plimpton) of the New York bar, admitted pro hac vice, attorneys for appellants Phelps Dodge Corporation and Columbian Chemicals Company (Michelangelo Troisi, of counsel; Michelle Hart Yeary and Mr. Kubek, on the joint brief).
Campbell, Campbell, Edwards & Conroy and Hima Vatti (O'Melveny & Myers) of the Washington DC bar, admitted pro hac vice, attorneys for Degussa Engineered Carbons, LP, Degusssa AG, and Degussa Corporation (C. Scott Toomey, Turnerville, William A. Rupert and Ms. Vatti, on the joint brief).
Sufrin Zucker Steinberg Sonstein & Wixted, Krishna B. Narine, of the Pennsylvania bar, admitted pro hac vice, Steven E. Connolly (Schiffrin & Barroway) of the Pennsylvania bar, admitted pro hac vice, and Isaac L. Diel, admitted pro hac vice, of the Kansas bar, attorneys for respondent (Ms. Narine, Mr. Connolly and Mr. Diel, of counsel; David W. Sufrin, Camden, on the brief).
Before Judges NEWMAN, AXELRAD and BILDER.
The opinion of the court was delivered by
*269 AXELRAD, J.T.C. (temporarily assigned).
A purchaser of Goodyear tires filed a class action suit against companies which produce, manufacture and sell carbon black, a primary ingredient in tires. At issue in this appeal is whether an indirect purchaser of an allegedly price-fixed product may state a claim for antitrust violations under the New Jersey Antitrust Act (ATA), N.J.S.A. 56:9-1 to -19, and the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. We hold that neither statute provides a cause of action to a pass-through purchaser such as the putative class plaintiff, and reverse the order of the Law Division denying defendants' motion to dismiss plaintiff's complaint under Rule 4:6-2(e).
In November and December 2001, plaintiff Louis Sickles purchased from the Goodyear Auto Service Center in Cherry Hill, New Jersey, two Goodyear tires (P215/70R15 97S S1 Regatta 2 XNWRPTL) for his wife's vehicle and one Goodyear tire (P205/65 R15 92H S1 Eagle HP VSBLRPTL) for his vehicle. He then filed an action alleging violations of the ATA and CFA, seeking damages on behalf of
[a]ll persons residing in the state of New Jersey who purchased any product that was manufactured using Carbon Black sold by Defendants from January 1999 through November 2002.
Defendants are Cabot Corporation (Cabot); Phelps Dodge Corporation (Phelps Dodge); Columbian Chemicals Company (Columbian); Degussa Engineered Carbons, LP (DEC); Degussa AG; and Degussa Corporation. Cabot, a Delaware corporation with its principal place of business in Massachusetts, is the world's largest producer of carbon black, accounting for one-quarter of the worldwide production capacity and market share. Phelps Dodge is a New York corporation with its principal place of business in Arizona and wholly owns the subsidiary Columbian, which is engaged in the manufacture and sale of carbon black within the United States and throughout the world and maintains a carbon black facility in Ulysses, Kansas. DEC, a limited partnership with its principal place of business in New Jersey, is co-owned by Degussa AG and engages in the manufacture and sale of carbon black throughout the world.
Carbon black is a mixture of partially burned hydrocarbons produced by a combustion of natural gas. It is used as a reinforcing agent in rubber products such as tires, tubes, cables and conveyor belts and is the primary ingredient in car and truck tires. It is also used as an ingredient in countless other products such as dry-cell batteries, electrical conductors, and carbon brushes, and as a pigment in printing, carbon paper, typewriter ribbon inks, paints, photocopier toner and record discs.
The complaint alleged that defendants and their co-conspirators engaged in anti-competitive activities in violation of the ATA to artificially raise, stabilize, and maintain the price of carbon black sold by defendants from January 1999 through November 2002, resulting in plaintiff and other similarly situated consumers paying more for tires containing carbon black than they would have in the absence of defendants' alleged unlawful conduct. Plaintiff further claimed that defendants coordinated and cooperated with one another to implement output restrictions and price increases and agreed not to compete against one another to increase their respective market shares. Plaintiff also alleged these acts constituted an unconscionable practice under the CFA.
By order of November 29, 2004, the trial court denied defendants' motion to dismiss *270 plaintiff's complaint for failure to state a claim. On February 24, 2005, we granted defendants' motion for leave to appeal. Defendants raise the following issues on appeal:
POINT I
THE [ATA] DISALLOWS INDIRECT PURCHASER CLAIMS.
1. The Harmonization Provision of the [ATA] Directs Conformity To Federal Antitrust Precedents, and Thus Prohibits Plaintiff's Claims.
2. The New Jersey Legislature Rejected An Illinois Brick Repealer Bill.
3. The Trial Court Erred in Failing To Follow Illinois Brick and in Misapplying ARC America.

POINT II
THE []CFA DOES NOT ALLOW PLAINTIFF'S CLAIM.
1. The []CFA Does Not Cover Any Antitrust Claims Whatsoever.
2. The []CFA Cannot Be Used To Make An End Run Around the [ATA's] Bar of Indirect Purchaser Claims.
We find these arguments persuasive.

I
We recognize the indulgent standard that applies to review of complaints in the context of a motion to dismiss for failure to state a claim. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 771-72, 563 A.2d 31 (1989). A motion to dismiss under Rule 4:6-2(e) should be "approach[ed] with great caution" and should only be granted in "the rarest of instances." Ibid. We must view the allegations with great liberality and without concern for the plaintiff's ability to prove the facts alleged in the complaint. Id. at 746, 563 A.2d 31.
However, a court must dismiss the plaintiff's complaint if it has failed to articulate a legal basis entitling plaintiff to relief. Camden County Energy Recovery Assocs., L.P. v. New Jersey Dep't of Envtl. Prot., 320 N.J.Super. 59, 64, 726 A.2d 968 (App.Div.1999). "A motion to dismiss a complaint under Rule 4:6-2(e) for failure to state a claim upon which relief can be granted must be evaluated in light of the legal sufficiency of the facts alleged in the complaint." Donato v. Moldow, 374 N.J.Super. 475, 482, 865 A.2d 711 (App.Div.2005). The plaintiff's obligation on a motion to dismiss is "not to prove the case but only to make allegations, which, if proven, would constitute a valid cause of action." Leon v. Rite Aid Corp., 340 N.J.Super. 462, 472, 774 A.2d 674 (App.Div.2001).
We review such a motion by the same standard applied by the trial court; thus, considering and accepting as true the facts alleged in the complaint, we determine whether they set forth a claim upon which relief can be granted. Donato, supra, 374 N.J.Super. at 483, 865 A.2d 711.

II
The ATA was passed in 1970 "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade." N.J.S.A. 56:9-1 (Historical and Statutory Notes). Under the ATA, "[a]ny person who shall be injured in his business or property by reason of a violation of the provisions of this act may sue therefor and shall recover threefold the damages sustained by him, together with reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:9-12.
We follow federal antitrust law in interpreting our own antitrust statute.
*271 See N.J.S.A. 56:9-18 ("This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it."). See also Pomanowski v. Monmouth County Bd. of Realtors, 89 N.J. 306, 313, 446 A.2d 83 (1982) (Because the ATA is patterned after the Sherman Antitrust Act, courts have "concluded that federal court interpretations of federal law constitute persuasive authority as to the meaning of the particular state enactments.") (quoting State v. Lawn King, Inc., 84 N.J. 179, 192, 417 A.2d 1025 (1980)).
Passed by Congress in 1890, the Sherman Act, 15 U.S.C.A. § 1, declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations...." Section 4 of the Clayton Act, 15 U.S.C.A. § 15, provides a private right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws."
This private right, however, does not extend to indirect purchasers, as only overcharged direct purchasers, and not others in the chain of manufacture or distribution, are parties "injured in [their] business or property" within the meaning of the Clayton Act. Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707, reh'g denied, 434 U.S. 881, 98 S.Ct. 243, 54 L.Ed.2d 164 (1977). In Illinois Brick the State of Illinois, on behalf of itself and 700 municipalities who were indirect purchasers of concrete block, brought an antitrust action under Section 4 of the Clayton Act, alleging concrete block manufacturers and distributors had fixed prices of the concrete block in violation of Section 1 of the Sherman Act. Id. at 726-27, 97 S.Ct. at 2065, 52 L.Ed.2d at 713. As in the present case, the plaintiffs did not purchase the products directly from the defendants. Rather, the plaintiffs "[sought] to demonstrate that masonry contractors, who incorporated [defendants'] block into walls and other masonry structures, passed on the alleged overcharge on the block to general contractors, who incorporated the masonry structures into entire buildings, and that the general contractors in turn passed on the overcharge to [plaintiffs] in the bids submitted for those buildings." Id. at 735, 97 S.Ct. at 2069, 52 L.Ed.2d at 718. Thus, the block passed through two separate levels in the chain of distribution before reaching the plaintiffs. Id. at 726, 97 S.Ct. at 2065, 52 L.Ed.2d at 713.
The Supreme Court held that the entire antitrust remedy belongs to, and only to, direct purchasers, i.e., those who purchased the affected product directly from the defendants, and that indirect or pass-through purchasers, i.e., those who purchased the defendants' product further down the distribution chain, have no standing under federal antitrust law. As the Court reasoned,
[p]ermitting the use of pass-on theories under § 4 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge from direct purchasers to middlemen to ultimate consumers.... [This] would add whole new dimensions of complexity to the treble-damages suits and undermine their effectiveness.
[Id. at 737, 97 S.Ct. at 2070, 52 L.Ed.2d at 719.]
This rationale was consistent with the Court's holding in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), an antitrust action brought under Section *272 4 of the Clayton Act against a manufacturer of shoe machinery by one of its customers, a manufacturer of shoes. The Court rejected as a matter of law the defense that the retailer plaintiff as a direct purchaser had not been injured in its business as required by the statute because it had passed on the claimed illegal overcharge to its customers who were indirect purchasers of defendant's shoe machinery. Id. at 494, 88 S.Ct. at 2232, 20 L.Ed.2d at 1241-42.
In Illinois Brick, the Supreme Court reaffirmed its holding in Hanover Shoe, concluding the rationale in that case could not justify unequal treatment of plaintiffs and defendants with respect to the permissibility of pass-on arguments:
The principal basis for the decision in Hanover Shoe was the Court's perception of the uncertainties and difficulties in analyzing price and output decisions "in the real economic world rather than an economist's hypothetical model," ... and of the costs to the judicial system and the efficient enforcement of the antitrust laws of attempting to reconstruct those decisions in the courtroom. This perception that the attempt to trace the complex economic adjustments to a change in the cost of a particular factor of production would greatly complicate and reduce the effectiveness of already protracted treble-damages proceedings applies with no less force to the assertion of pass-on theories by plaintiffs than it does to the assertion by defendants.... Indeed, the evidentiary complexities and uncertainties involved in the defensive use of pass-on against a direct purchaser are multiplied in the offensive use of pass-on by a plaintiff several steps removed from the defendant in the chain of distribution. The demonstration of how much of the overcharge was passed on by the first purchaser must be repeated at each point at which the price-fixed goods changed hands before they reached the plaintiff.
[Illinois Brick, supra, 431 U.S. at 731-33, 97 S.Ct. at 2067-68, 52 L.Ed.2d at 716-17 (internal citation omitted).]
Additionally, the Court reasoned if both direct and indirect purchasers were permitted to recover, antitrust defendants would be exposed to duplicate damages for the same injury. Id. at 746-47, 97 S.Ct. at 2075, 52 L.Ed.2d at 725-26.
In response to Illinois Brick, several state legislatures amended their antitrust acts to include a so-called "Illinois Brick repealer" expressly granting standing in antitrust treble-damage actions to indirect purchasers, including the ultimate consumers.[1] In California v. ARC America *273 Corp., 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), the Supreme Court upheld the right of states to allow suits by indirect purchasers under their own antitrust statutes, notwithstanding the federal rule limiting federal antitrust recoveries to direct purchasers. The Court found that "[g]iven the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States." Id. at 101, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d at 94-95 (footnote omitted). In concluding that state indirect purchaser statutes were not pre-empted by federal law, the Court stated, "nothing in Illinois Brick suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws." Id. at 103, 109 S.Ct. at 1666, 104 L.Ed.2d at 96.
Not only has our Legislature not enacted a repealer amendment in response to Illinois Brick, but when an attempt was made, the bill was never reported out of committee. (Assembly Bill No. 4629, March 11, 1991). The bill proposed to amend N.J.S.A. 56:9-12 of the ATA to allow recovery to "[a]ny person who shall be injured directly or indirectly in his business or property by reason of a violation of the provisions of this act." The statement accompanying the bill expressly referenced the Illinois Brick holding and stated it was intended to
clarify that under the [ATA], indirect purchasers of goods and services are permitted to seek damages in antitrust cases. The bill would create a presumption that in the absence of a preponderance of evidence to the contrary, the final indirect purchaser of goods and services is the party actually injured in the antitrust violation.
[Statement to Assembly Bill No. 4629 (March 11, 1991).]
In the present case, the trial judge recognized our courts' obligation to follow federal law in construing the ATA and, under Illinois Brick, that federal antitrust law prohibits indirect purchaser suits. He further acknowledged that our Legislature declined to pass an Illinois Brick repealer. The judge concluded, however, that a claim asserting an antitrust violation by an indirect purchaser, such as plaintiff, is cognizable under both the ATA and CFA. His rationale was based on the Supreme Court's ruling in ARC America permitting states to allow indirect purchaser suits, the broad language of N.J.S.A. 56:9-12 which grants standing to "[a]ny person who shall be injured in his business or property" to bring an action under the ATA for an antitrust violation, and the absence of express statutory language prohibiting indirect purchasers from suing under the ATA. (Emphasis added). The judge further concluded that plaintiffs "put forth a cause of action based on defendants' alleged price fixing, which ... can be construed as ... an unconscionable commercial practice" under the CFA.
We decline to adopt this rationale. We are persuaded, instead, by the logic and analysis of Judge Miniman in Island Mortgages of New Jersey v. 3M, 373 N.J.Super. 172, 860 A.2d 1013 (Law Div.2004), denying standing to a putative class of purchasers of invisible and transparent tape products *274 to assert an antitrust claim against 3M, a tape manufacturer, under the CFA. The plaintiffs, who purchased 3M products through independent retailers, alleged that "3M engaged in a course of unconscionable conduct aimed at restricting the access of plaintiffs and the class to lower-priced transparent tape offered by 3-M competitors" through tactics such as a rebate structure which rewarded retailers for refusing to carry private label Scotch tape and providing cash incentives for entering into exclusive arrangements with defendant. Id. at 175-76, 860 A.2d 1013. According to the plaintiffs, "[t]he effect of such arrangements was to prevent retailers from offering lower cost private label Scotch tape to plaintiffs and the class" causing "significant harm to class members by increasing the price they have paid for transparent tape above competitive levels and/or by denying them a free choice in a competitive market, as well as the benefits of innovation." Id. at 176, 860 A.2d 1013. As in the present case, the plaintiffs rested their CFA claim on the legal theory that 3M's alleged monopolistic conduct was, by itself, an unconscionable commercial practice actionable under the CFA. Id. at 177, 860 A.2d 1013.
The court acknowledged the CFA should be "applied broadly to accomplish its remedial purpose, namely to root out consumer fraud." Id. at 176, 860 A.2d 1013 (quoting Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 264, 696 A.2d 546 (1997)). Nevertheless, the court granted the defendants' motion to dismiss under Rule 4:6-2(e), concluding the plaintiffs had "failed to set forth any factual allegation that would satisfy the requirement that a claim for unconscionable commercial practices demonstrate `a capacity to mislead[,]'" a fundamental predicate for maintaining a claim under the CFA. Island Mortgages, supra, 373 N.J.Super. at 177, 860 A.2d 1013 (citing Fenwick v. Kay America Jeep, Inc., 72 N.J. 372, 378, 371 A.2d 13 (1977); New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 13, 842 A.2d 174 (App.Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003); and Leon v. Rite Aid Corp., 340 N.J.Super. 462, 470-72, 774 A.2d 674 (App.Div. 2001)).
Alternatively, the court dismissed the plaintiffs' complaint on the grounds that, as indirect purchasers, they lacked standing to pursue antitrust claims under the CFA. Island Mortgages, supra, 373 N.J.Super. at 177-78, 860 A.2d 1013. The court reasoned that indirect purchasers would lack standing to pursue claims under the ATA based on the harmonizing provision of N.J.S.A. 56:9-18 and the Supreme Court's holding in Illinois Brick, which deprives indirect consumers of standing under the Clayton Act. Id. at 179-80, 860 A.2d 1013. Accordingly, the plaintiffs were precluded from attempting to recast the very same antitrust conduct as a CFA claim. Ibid. The court insightfully stated:
This court finds that plaintiffs' attempt to bring suit under the [CFA] is in direct conflict with the well-founded policies interpreting federal and New Jersey antitrust law. Plaintiffs in this case allege conduct that is traditionally classified under antitrust law. Although the CFA should be broadly applied, in this instance, allowing plaintiffs to move forward with their suit would undermine the standing requirements of the [ATA]. "It is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same subject matter." State v. Green, 62 N.J. 547, 554, 303 A.2d 312, 316 (1973).
[Id. at 180, 860 A.2d 1013.]
We recognize that the ATA does not expressly restrict the right of action to *275 direct purchasers injured by antitrust violations. It is clear, however, based on the holding in Illinois Brick, the harmonization clause of N.J.S.A. 56:9-18, and the failed attempt by our Legislature to amend the ATA with an Illinois Brick repealer, that an indirect purchaser is precluded from suing for antitrust violations under the ATA. The United States Supreme Court unequivocally held in Illinois Brick that indirect or pass-through purchasers, i.e., those who purchased a manufacturer's product further down the distribution chain, have no standing under federal antitrust laws for damages caused by price-fixing. The Court expressly found that indirect purchasers were not parties "injured in [their] business or property" under Section 4 of the Clayton Act. Illinois Brick, supra, 431 U.S. at 728-29, 97 S.Ct. at 2061, 52 L.Ed.2d at 714-15. In ARC California, the Court merely held that state indirect purchaser laws, so-called Illinois Brick repealers, were not pre-empted by federal law, notwithstanding the Illinois Brick rule limiting federal antitrust recoveries under the Clayton Act to direct purchasers. The decision did not create a cause of action for indirect purchasers to pursue.
Our Legislature specifically incorporated federal precedent, providing in N.J.S.A. 56:9-18 that the ATA "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes...." This is a mandatory, not a permissive statute. As our antitrust act was patterned after the Sherman Act, we have consistently "acknowledged the significance of federal antitrust decisions in the interpretation of our State antitrust law." Monmouth Chrysler-Plymouth, Inc. v. Chrysler Corp., 102 N.J. 485, 494, 509 A.2d 161 (1986) (citing Pomanowski, supra, 89 N.J. at 313, 446 A.2d 83; Lawn King, supra, 84 N.J. at 179, 417 A.2d 1025). The language of our ATA conferring the right to treble-damage recovery on "[a]ny person who shall be injured in his business or property" by antitrust violations, N.J.S.A. 56:9-12, is identical to Section 4 of the Clayton Act.
In Illinois Brick, the United States Supreme Court rendered a decision directly on point construing that language and limiting federal antitrust recoveries to direct purchasers. Although we recognize that a piece of legislation may not be reported out of committee for a variety of reasons unrelated to its substance and that legislative inaction is not conclusive, the fact that in 1991 our Legislature expressly considered, and rejected, an Illinois Brick repealer amendment to the ATA, clearly signals its agreement with Illinois Brick. See, e.g., Garden State Farms, Inc. v. Bay, 77 N.J. 439, 453, 390 A.2d 1177 (quoting 2A Sutherland Statutory Construction, § 48.18 at 225 (Sands ed., 4th ed. 1973)) ("`[C]aution must be exercised in using the action of the legislature on proposed amendments as an interpretative aid' in discerning legislative intent."). Thus, in the absence of an Illinois Brick repealer or other language by our Legislature evidencing an intent to permit indirect, as well as direct purchasers, to recover for antitrust violations, it is clear New Jersey courts are directed to follow the Illinois Brick holding.[2]
*276 Plaintiff brought this antitrust action seeking to recover treble damages under the ATA on behalf of all residents of New Jersey "who purchased any product that was manufactured using Carbon Black sold by Defendants from January 1999 through November 2002." As the pleadings clearly indicate that plaintiff's putative class is comprised of indirect or pass-through purchasers, plaintiff has no standing to bring suit against defendants under N.J.S.A. 56:9-12 for alleged antitrust violations. Accordingly, defendants' motion to dismiss the complaint for failure to state a claim under Rule 4:6-2(e) should have been granted.

III
Nor can this putative class plaintiff maintain an action seeking damages for monopolization, price-fixing, and other anti-competitive activities under the CFA. Enacted in 1960, the CFA "was passed in response to widespread complaints about selling practices which victimized consumers." Fenwick, supra, 72 N.J. at 376, 371 A.2d 13. It was intended to "root out consumer fraud" and protect consumers by eliminating "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." Lemelledo, supra, 150 N.J. at 266, 696 A.2d 546 (quoting Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271, 390 A.2d 566 (1978)). The CFA empowers private plaintiffs to recover for treble damages, attorneys fees and costs upon a demonstration of an "ascertainable loss of moneys or property, real or personal" as a result of an unlawful practice as defined by the act. N.J.S.A. 56:8-19. The CFA declares the following to be an unlawful practice:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby....
[N.J.S.A. 56:8-2.]
The phrase "unconscionable commercial practice[,]" added to the definition of "unlawful practice" in 1971, N.J.S.A. 56:8-2, L. 1971, c. 247, § 1 (June 29, 1971), has been defined by our Supreme Court as acts lacking "good faith, honesty in fact, and observance of fair dealing." Cox v. Sears Roebuck & Co., 138 N.J. 2, 18, 647 A.2d 454 (1994). "[C]apacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." Fenwick, supra, 72 N.J. at 378, 371 A.2d 13.
Plaintiff's complaint is bereft of any allegation that defendants used deception, fraud or misrepresentation or concealed material facts concerning the sale of carbon black to the putative class of consumers. Plaintiff does not allege that defendant carbon black manufacturers made any misrepresentations to him, fraudulently concealed any carbon black pricing information from him, or had communication or contact of any kind with him. Nor does he assert that defendants' price-fixing of carbon black, an ingredient in tires, lured *277 him into, or even influenced, his decision to purchase Goodyear tires. Even with every reasonable inference of fact and the most liberal construction, Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31, these claims cannot be read into plaintiff's lawsuit. Plaintiff's sole legal theory under the CFA is that defendants' alleged monopolistic conduct constitutes an unconscionable commercial practice. Plaintiff has failed to set forth any factual allegations to demonstrate "a capacity to mislead" as there is nothing inherently misleading in defendants' alleged acts of controlling the supply and overcharging for the price-fixed products.
Moreover, the putative class plaintiff lacks standing to pursue his CFA claim. The CFA was enacted to help eradicate consumer fraud, not to "advance public policy in favor of competition and prevent practices which deprive consumers of the benefit of competitive markets" which is the "overriding purpose of the New Jersey Antitrust Act." Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J.Super. 140, 175, 659 A.2d 904 (App.Div.), certif. denied, 141 N.J. 99, 660 A.2d 1197 (1995). Plaintiff alleges only that defendants' price-fixing and monopolistic conduct resulted in higher-priced tires. Thus, for us to permit an indirect purchaser, such as plaintiff, to recast his antitrust claim as a consumer fraud violation would undermine the standing requirements of the ATA and would "essentially permit an end run around the policies allowing only direct purchasers to recover under the Antitrust Act." Abbott Labs., Inc. v. Segura, 907 S.W.2d 503, 506 (Texas 1995); see also Blewett v. Abbott Labs., 86 Wash.App. 782, 938 P.2d 842 (1997), review denied, 133 Wash.2d 1029, 950 P.2d 475 (1998) (denying an indirect purchaser standing to recover for antitrust conduct through a lawsuit under its consumer fraud act). Cf. Mack v. Bristol-Myers Squibb Co., 673 So.2d 100 (Fla.Dist. Ct.App.1996), review dismissed, 689 So.2d 1068 (1977) (permitting indirect purchasers to sue under Florida's consumer protection statute which contained language protecting consumers from "unfair methods of competition" in addition to unconscionable, deceptive and unfair acts).
Although we recognize our antitrust and consumer fraud statutes are to be liberally interpreted, their remedial provisions are not without limit. In analyzing and interpreting these statutes in light of their context, historical background, policy considerations, legislative history, case law, and policy considerations, we are satisfied our holding advances the intent and spirit of the ATA and CFA.
As plaintiffs, indirect consumers, do not have a valid cause of action against defendants under either the ATA or the CFA, defendants' motion to dismiss plaintiff's complaint under Rule 4:6-2(e) should not have been denied by the trial court.
Accordingly, the order of November 29, 2004 is reversed and plaintiff's complaint is dismissed with prejudice.
NOTES
[1] Twenty-three states and the District of Columbia have adopted Illinois Brick repealer statutes: Alabama, Ala.Code § 6-5-60(a) 2005; Alaska, Alaska Stat. § 45.50.577 (Michie 2004); California, Cal. Bus. & Prof.Code § 16750(a) (West 2005); Colorado, Colo.Rev. Stat. Ann. § 6-4-111(2) (West 2005) (authorizing the state attorney general to bring suit for indirect injury to any government or public entity); District of Columbia, D.C.Code Ann. § 28-4509 (2005); Hawaii, Haw.Rev. Stat. Ann. §§ 480-3, -13, and -14 (Michie 2004) (allowing the state attorney general to file class action suit on behalf of indirect purchasers); Idaho, Idaho Code § 48-108(2) (Michie 2004) (permitting the state attorney general as parens patriae to bring suit); Illinois, 740 Ill. Comp. Stat. Ann. 10/7(2) (West 2005); Kansas, Kan. Stat. Ann. § 50-161(b) (2004); Maine, Me.Rev.Stat. Ann. tit. 10, § 1104(1) (West 2005); Maryland, Md.Code Ann., Com. Law II § 11-209(b)(2)(ii) (2005) (allowing the state and its subdivisions to bring indirect purchaser suits); Michigan, Mich. Comp. Laws § 445.778(2) (2005); Minnesota, Minn.Stat. Ann. § 325D.57 (West 2005); Mississippi, Miss.Code Ann. § 75-21-9 (2005); Nebraska, Neb.Rev.Stat. § 59-821 (2005); Nevada, Nev.Rev.Stat. 598A.210(2) (2005); New Mexico, N.M. Stat. Ann. § 57-1-3(A) (Michie 2005); New York, N.Y. Gen. Bus. Law § 340(6) (McKinney 2005); North Dakota, N.D. Cent.Code § 51-08.1-08(3) (2003); Oregon, Or.Rev.Stat. § 646.775(1) (2005) (allowing attorney general to sue on behalf of indirect purchasers); Rhode Island, R.I. Gen. Laws § 6-36-12 (2004) (allowing attorney general to sue on behalf of indirect purchasers); South Dakota, S.D. Codified Laws § 37-1-33 (Michie 2005); Vermont, Vt. Stat. Ann. tit. 9, § 2465(b) (2004); Wisconsin, Wis. Stat. Ann. § 133.18(1)(a) (West 2005). See Bunker's Glass Co., v. Pilkington PLC, 206 Ariz. 9, 75 P.3d 99, 104 n. 4 (2003).
[2] Of the twenty-six states and District of Columbia that allow some form of indirect purchaser actions for antitrust violations, only four of the states have done so by judicial construction of their statutes in the absence of an Illinois Brick repealer: Arizona, Bunker's Glass Co. v. Pilkington, PLC, 206 Ariz. 9, 75 P.3d 99, 106-08 (2003); Iowa, Comes v. Microsoft Corp., 646 N.W.2d 440, 451 (Iowa 2002); North Carolina, Hyde v. Abbott Labs., Inc., 123 N.C.App. 572, 473 S.E.2d 680, 684 (1996); and Tennessee, Blake v. Abbott Labs., Inc., 894 F.Supp. 327, 329 (E.D.Tenn.1995). We note that Arizona's antitrust statute is phrased permissively, rather than mandatorily. Bunker's Glass, supra, 75 P.3d at 105.