921 A.2d 414

RICHARD M. WILSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFF-APPELLANT, v. GENERAL MOTORS CORPORATION, GENERAL MOTORS OF CANADA, LTD., FORD MOTOR COMPANY, FORD MOTOR COMPANY OF CANADA, LTD., TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA CANADA, INC., HONDA MOTOR COMPANY, LTD., AMERICAN HONDA MOTOR CO., INC., HONDA CANADA, INC., DAIMLERCHRYSLER AKTIENGESELLSCHAFT, DAIMLERCHRYSLER CANADA, INC., MERCEDES-BENZ CANADA, INC., NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., NISSAN CANADA, INC., BMW OF NORTH AMERICA, INC., BMW CANADA, NATIONAL AUTOMOBILE DEALERS ASSOCIATION AND CANADIAN AUTOMOBILE DEALERS ASSOCIATION, DEFENDANTS-RESPONDENTS.

Argued January 29, 2007—Decided March 20, 2007.

*Donna Siegel Moffa* argued the cause for appellant (*Trujillo Rodríguez & Richards,* attorneys; *Ms. Moffa, Lisa J. Rodríguez* and *Nicole M. Acchione,* on the briefs).

*William R. Sherman,* a member of the District of Columbia bar, argued the cause for respondents *Campbell Campbell Edwards & Conroy,* attorneys for Ford Motor Company and Ford Motor Company of Canada, Ltd., (*Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray,* attorneys for General Motors Corporation and General Motors of Canada, Ltd., *Krovatin & Associates,* attorneys for American Honda Motor Co., Inc., *Cooper, Rose & English,* attorneys for Nissan North America, Inc., *Marshall, Dennehey, Warner, Coleman & Coggin,* attorneys for DaimlerChrysler Canada, Inc. and Mercedes–Benz Canada, Inc. and *Connell Foley,* attorneys for National Automobile Dealers Association; *Bryan D. McElvaine, Joseph E. O'Neil, Gerald Krovatin, Peter M. Burke, Kevin M. McKeon* and *Brian G. Steller,* on the brief).

PER CURIAM.

Plaintiffs appeal as of right, pursuant to *Rule* 2:2–1(a)(2) following a dissent in the Appellate Division, from a judgment affirming the dismissal of their complaints in the Law Division.[1] Plaintiffs'

---

[1] Four separate complaints, filed as class actions, were consolidated under the *Wilson v. General Motors* caption.

complaint alleged violations of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–1 to –19, and that those acts constituted "unconscionable practices" in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20(CFA).[2] The appeal to the Appellate Division challenged only the dismissal of plaintiffs' claims under the CFA, and, in an unpublished opinion, a majority of the Appellate Division affirmed the judgment dismissing the CFA complaint.

In the words of plaintiffs' brief,

[t]he gravamen of Plaintiffs' complaints was that the Manufacturing Defendants, with the aid and assistance of the dealer association defendants, entered a series of agreements pursuant to which they took various actions intended to ensure that New Jersey (and other United States) consumers could not purchase new cars sold to dealers in Canada and, instead could only purchase those same cars in the United States—at higher prices.

According to plaintiffs,

[t]he complaints allege that the Manufacturing Defendants, in concert with the automobile dealer association defendants, engaged in a wide-ranging conspiracy to prevent vehicles that they had sold to dealers in Canada from being exported and sold to consumers in New Jersey (and the United States), so that consumers of the Manufacturer-Defendants' vehicles would have to pay higher prices for those vehicles.

---

[2] The Wilson and Kaufman complaints do not expressly state "causes of action [in] violation of *N.J.S.A.* 56:9–3," as do the Williams and Tatte complaints. However, the Wilson and Kaufman complaints allege that "[d]efendants have engaged in unfair methods of competition in violation of the standards of conduct established by the New Jersey Antitrust Act, *N.J.S.A.* 56:9–1, *et seq.* The violation of this [A]ct constitutes unfair and unconscionable practices, which are actionable pursuant to the New Jersey Consumer Fraud Act 56:8–2." According to the Wilson and Kaufman complaints:

The contract, combination and conspiracy alleged herein was an unconscionable commercial practice prohibited by the New Jersey Fraud Statute and other state statutes prohibiting price fixing. The unconscionable commercial practice consisted of a continuing agreement, understanding and concert of action among the Defendants and their co-conspirators the substantial terms of which were to eliminate the import of new cars from Canada into the United States and thereby raise, fix, stabilize or maintain prices of new automobiles sold or leased in the State of New Jersey and throughout the United States at artificially high levels.

"The complaints allege that Defendants sought to restrict the supply of, and the alternative sources for, new vehicles for New Jersey consumers in order to artificially drive up the prices for vehicles purchased in New Jersey." Plaintiffs further allege that "[b]y preventing New Jersey consumers from having the alternative of a supply of cars from Canada, the Manufacturing Defendants unreasonably increased the costs incurred for their products by New Jersey consumers." Thus, plaintiffs acknowledge that "[t]he conduct, the object of which was to ensure that consumers paid higher prices for the Manufacturing Defendant[s'] vehicles, included actions directed at the Manufacturing Defendants new vehicle dealers[.]"

In affirming the dismissal of the complaints the Appellate Division majority concluded:

> Because the only acts and practices included in the complaint are anti-competitive acts in furtherance of an antitrust conspiracy, because there is no act alleged that constitutes a deception or includes any type of misleading behavior directed at these plaintiffs, because all of the acts complained of affect plaintiffs only in their status as indirect consumers, we conclude that their complaint cannot state a claim for relief under the Consumer Fraud Act. To conclude to the contrary, as we found in *Sickles [v. Cabot Corp.,* 379 *N.J.Super.* 100, 877 *A.2d* 267 (App.Div.), *certif. denied,* 185 *N.J.* 297, 884 *A.2d* 1267 (2005) ], would be to create an "end run" around the plain intention of the Legislature embodied in the Antitrust Act. *See Sickles, supra,* 379 *N.J.Super.* at 117 [877 *A.2d* 267] (quoting *Abbott Labs. [Inc. v. Segura,* 907 *S.W.2d* 503, 506 (Tex.1995)) ].

As stated in *Sickles v. Cabot Corp.,* 379 *N.J.Super.* 100, 107, 877 *A.2d* 267 (App.Div.), *certif. denied,* 185 *N.J.* 297, 884 *A.2d* 1267 (2005), "[w]e follow federal antitrust law in interpreting our own antitrust statute," *see N.J.S.A.* 56:9–18, and under *Illinois Brick Co. v. Illinois,* 431 *U.S.* 720, 97 *S.Ct.* 2061, 52 *L.Ed.2d* 707, *reh'g denied,* 434 *U.S.* 881, 98 *S.Ct.* 243, 54 *L.Ed.2d* 164 (1977), indirect purchasers, such as plaintiffs, who did not purchase vehicles directly from defendants have no standing to assert a private right of action under the New Jersey Antitrust Act. Those propositions are uncontested for purposes of this appeal.

According to the Appellate Division majority:

> Carefully read, the complaint rests only on allegations that are traditional anticompetitive behaviors that plaintiffs argue affect them indirectly. They have

identified no acts undertaken by defendants except for those in furtherance of the antitrust conspiracy. Each of the acts by defendants that were explicitly directed at dealers, including conspiracy, refusal to sell to dealers in Canada who might export cars to the United States, instituting chargebacks, requiring agreements not to export and terminating dealerships of uncooperative dealers, are allegations of antitrust activities with an indirect effect on plaintiffs, recovery for which is barred under *Illinois Brick*. Even the few factual allegations that are not directed solely at the dealers, including tracking VIN numbers, causing domestic dealers to refuse to honor warranties or to install imperial measure odometers and speedometers, or refusing to provide recall information to domestic purchasers of Canadian vehicles, are acts in furtherance of the conspiracy and are only acts that affect plaintiffs indirectly. The complaints simply do not include any facts that constitute an unconscionable commercial practice apart from the antitrust conspiracy and the acts undertaken in furtherance thereof.

However expansively we may understand the term "unconscionable commercial practice" as it is used in the Consumer Fraud Act, the heart of plaintiffs' appeal asks us to read that language to effect a repealer of *Illinois Brick*. Plaintiffs suggest that factual allegations that sound only in antitrust violations can support a claim by indirect purchasers through use of the Consumer Fraud Act where the Legislature has specifically rejected such a cause of action under the Antitrust Act itself. In doing so, plaintiffs ask us to accomplish by judicial analysis of the Consumer Fraud Act a result which our Legislature has expressly rejected. We decline to do so.

The dissenting Appellate Division judge concluded that reading the allegations of the complaint as required for purposes of a motion to dismiss under *Rule* 4:6–2(e), "plaintiffs have alleged the fundamentals of a consumer fraud cause of action, i.e., that independently of the price-fixing conspiracy, defendants have engaged in conduct that violates the [CFA]." The judge believed that allegations that the "Manufacturing Defendants"

among other things, sought and obtained agreement from their United States dealers to: [ (1) ] [n]ot honor new car warranties on cars imported from Canada; and [ (2) ] [n]ot install properly calibrated imperial measure speedometers and odometers in cars imported from Canada which had metric speedometers and odometers[ ] . . . [as well their taking of] measures to enforce the [ ] agreements[ ] [by] [r]efusing to provide U.S. purchasers of new Canadian cars with information regarding recalls . . . suggest[ed] the fundamentals of a CFA cause of action, which is independent of the price-fixing, antitrust violation.

The dissenting judge also concluded that those "CFA claims . . . may be pursued without creating a conflict between the Antitrust Act and the CFA."

The alleged wrongdoing was essentially directed to the sale of vehicles in Canada and their importation into the United States, and there are no allegations of communications with, or directed to, consumers "in connection with the sale or advertisement" of vehicles, as required by *N.J.S.A.* 56:8–2. *See also N.J.S.A.* 56:8–1 (definitions). Even if the complaints can be said to allege an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact ... in connection with the sale or advertisement" of a motor vehicle to a putative plaintiff, in violation of *N.J.S.A.* 56:8–2, we agree with the Appellate Division majority that the allegations in the complaints, which essentially assert an anticompetitive scheme in violation of the Antitrust Act without any allegation of a direct or indirect statement or communication with any plaintiff, are precluded under *Illinois Brick.* However, we leave for another day whether a CFA action would be precluded when the allegations of a violation of the Antitrust Act include communications with, or statements to, New Jersey consumers that are clear violations of the CFA.

Affirmed.

*For affirmance*—Justices LaVECCHIA, WALLACE, RIVERA–SOTO, STERN (t/a) and LINTNER (t/a)—5.

*Opposed*—None.