**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1962-17T1

ISRAEL BLUM and JUDY BLUM,

     Plaintiff-Appellants,

v.

TOWNSHIP OF LAKEWOOD, a
municipal corporation of the State of
New Jersey,

     Defendant,

and

LAKEWOOD TENANTS
ORGANIZATION, INC., a New Jersey
nonprofit corporation, MEIR HERTZ,
as Executive Director of Lakewood
Tenants Organization, Inc., MONMOUTH
COUNTY PUBLIC HOUSING AUTHORITY,
a body corporate and politic of the State of
New Jersey, and RICHARD REZNAK,
as Executive Director of the Monmouth
County Public Housing Authority,

     Defendants-Respondents.

_____

Argued January 16, 2019 – Decided January 7, 2020

Before Judges Alvarez, Nugent and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0538-17.

Kenneth Mark Goldman argued the cause for appellants (South Jersey Legal Services, attorneys; Kenneth Mark Goldman, Olatokunbo Emmanuel, and Justine Digeronimo, on the briefs).

Patrick James Boyle argued the cause for respondents Monmouth County Public Housing Authority and Richard Reznak.

Allen S. Kaplan argued the cause for respondents Lakewood Tenants Organization and Meir Hertz (Kaplan & Bookbinder, attorneys; Allen S. Kaplan, on the brief).

The opinion of the court was delivered by

NUGENT, J.A.D.,

This appeal involves federal subsidized housing, the entities that administer it at the county level, and the program known as the Section 8 Housing Choice Voucher Program. Plaintiffs, Israel Blum and Judy Blum, qualified for and received a voucher from defendant Monmouth County Public Housing Authority. The Blums transferred the voucher to Ocean County, but during the time they looked for housing there, the voucher expired. In the meantime, defendant Lakewood Tenants Organization, Inc., which administers the housing choice voucher program in Lakewood Township, had provided

plaintiffs with a document entitled "Home Run™ Homeownership Voucher." The parties dispute the purpose of this document.

Although the Monmouth-issued voucher had expired, and plaintiffs knew the Home Run™ Homeownership Voucher would no longer be funded, they purchased a home without governmental assistance and now receive no Section 8 subsidy for their monthly mortgage payment. Believing they were wronged and seeking relief, they filed this lawsuit, alleging causes of action for, among other wrongs, violation of their Fourteenth Amendment due process rights and violation of their rights under the United States Housing Act of 1937, in contravention of 42 U.S.C. § 1983.

The trial court dismissed plaintiffs' complaint for failure to state a claim upon which relief could be granted. Plaintiffs appeal. Because the complaint does not state a claim that establishes the elements of a cause of action under 42 U.S.C. §1983, and for the reasons that follow, we affirm.

I.

A.

Government subsidized housing had its inception in the United States when "Congress enacted the Housing Act of 1937 (Housing Act), 50 Stat. 888 et seq.[,]" in response to "a severe housing shortage." United States v. Wells

Fargo Bank, 485 U.S. 351, 353 (1988). The Housing and Community Development Act of 1974, codified as 42 U.S.C. § 1437f, amended the Housing Act of 1937 and established the Section 8 housing assistance program "[f]or the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing." 42 U.S.C. § 1437f(a). The Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105-276, § 545, 112 Stat. 2461 (1998), and its implementing regulations, 24 C.F.R. §§ 888, 982, merged two previously separate Section 8 programs into the Housing Choice Voucher Program (Voucher Program). The Voucher Program, which is administered through public housing agencies, is at the center of the controversy on this appeal.

If a family qualifies for assistance through the voucher program, a public housing agency or authority (PHA) issues a voucher to an eligible family. 24 C.F.R. § 982.302(a). After receiving the voucher, the family may search for a dwelling unit. Ibid. If it finds one, and if the PHA approves the unit, the family and unit owner must enter into a lease. 24 C.F.R. §§ 982.302(b), 982.305. The PHA enters into a separate Housing Assistance Payment (HAP) contract with the owner and agrees to pay the balance of the fair market rent as established by

A-1962-17T1

the United States Department of Housing and Urban Development (HUD). 24 C.F.R. § 982.1.

B.

Plaintiffs' thirty-eight-page complaint in the case before us contains 154 numbered paragraphs, references attached documents, and purports to plead six causes of action.[1] We recount the following facts found in these documents. See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) ("in evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'") (quoting Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

Plaintiffs are eligible for housing assistance. Monmouth County Public Housing Authority (Monmouth PHA) is a Public Housing Authority as defined in the Housing Act as amended. Defendant Reznak is its Executive Director. Township of Lakewood (Lakewood) acts as a public housing authority under the Housing Act. Lakewood Tenants Organization, Inc. (the Tenants Organization), has subcontracted with Lakewood to administer the Section 8 Housing Choice

---

[1] Plaintiffs inadvertently labeled two separate counts as the fifth count, rather than the fifth and sixth counts.

A-1962-17T1

Voucher Program.  Meir Hertz is the Tenants Organization's Executive Director. The Tenants Organization administers the Section 8 Housing Choice Voucher Program, which it calls the Lakewood Township Residential Assistance Program (Lakewood Assistance Program).

Monmouth PHA issued a housing choice voucher to plaintiffs on October 28, 2015.  The term of the voucher expired in sixty days, on December 28, 2015, but included an extension, which expired January 28, 2016.  The voucher included the following terms;

> I.  Housing Choice Voucher Program.
>
> > A.  The public housing agency (PHA) has determined that [plaintiffs'] family . . . is eligible to participate in the housing choice voucher program.  Under this program, the family chooses a decent, safe and sanitary unit to live in.  If the owner agrees to lease the unit to the family under the housing choice voucher program, and if the PHA approves the unit, the PHA will enter into a housing assistance payments (HAP) contract with the owner to make monthly payments to the owner to help the family pay the rent.
> >
> > . . . .
>
> 2.  Voucher.
>
> > A.  When issuing the voucher[,] the PHA expects that if the family finds an

A-1962-17T1

approvable unit, the PHA will have the money available to enter into a HAP contract with the owner. However, the PHA is under no obligation to the family, to any owner, or to any other person, to approve a tenancy. The PHA does not have any liability to any party by the issuance of this voucher.

B. The voucher does not give the family any right to participate in the PHA's housing choice voucher program. The family becomes a participant in the PHA's housing choice voucher program when the HAP contract between the PHA and the owner takes effect.

After plaintiffs received the voucher, they decided to use it to find housing in Lakewood. Monmouth PHA authorized plaintiffs to "port" or transfer the voucher to Ocean County and transferred the case to the Lakewood Assistance Program. The Lakewood Assistance Program could not "absorb" the case but rather chose to bill Monmouth PHA for its services in assisting plaintiffs.

Following the transfer of the case to Lakewood and the Lakewood Assistance Program, plaintiff sought to use the voucher to purchase a home rather than to rent a dwelling unit. They chose the Lakewood Assistance Program, operated by Lakewood and the Tenants Organization, to assist them.

Nothing in the record suggests or establishes that plaintiffs, Lakewood, the Tenants Organization, or anyone affiliated with the Lakewood Assistance

A-1962-17T1

Program notified Monmouth PHA that plaintiffs had changed their home ownership option from renting to buying a home, nor does the record evidence that anyone requested Monmouth PHA to further extend the voucher's termination date.

On December 9, 2015, plaintiffs signed a document entitled "Housing Choice Voucher Program" that identified the Lakewood Assistance Program as the "Public Housing Agency." Plaintiffs were still seeking a rental unit with this "voucher." However, plaintiffs learned from the Tenants Organization that the Lakewood Assistance Program had a Section 8 home ownership program option. Plaintiffs applied for it. According to plaintiffs, the Tenants Organization determined plaintiffs qualified to participate in this program, called "Home Run$^{TM}$."

On January 19, 2016, a Lakewood Assistance Program representative wrote a letter to Israel Blum. The letter referenced "Sec. 8 'Home Run$^{TM}$' Homeownership Program." The letter stated, "This letter is for information purposes only." The letter further stated in pertinent part:

> Based on the information submitted to this agency, you have been qualified for assistance of a 30-year mortgage, in the amount of $350,000.00 at an interest rate of 4.80%, for 15 years. The following is an estimate of funds that may be disbursed monthly on behalf of

your family, payable directly to you or the Mortgage Holder of your choice.

A maximum of $1,077.00, is based on the information currently available. This figure may be affected by a change in actual income, monthly mortgage payments, taxes, insurance and other applicable fees.

The January 19, 2016 letter appeared below the letterhead of the Lakewood Township Residential Assistance Program and was signed by Dina H. Strand. Her signature appeared below the typewritten nomination, "Lakewood Township Residential Assistance Program," and above her printed name followed by "Homeownership Coordinator."

On the same date, under the same letterhead, the following document was issued:

Home Run $^{TM}$ Homeownership Voucher

Name of Family Representative: Israel Blum

Signature of Family Representative: [Israel Blum signature]

Name of PHA Official: Dina H. Strand, Homeownership Coordinator

Signature of PHA Official: [Dina H. Strand signature]

Issue Date: 01/19/16                    Expiration Date: 05/19/16
                                        (120 days)

A-1962-17T1

Unit Size:  4 Bedrooms                                   Extension Date:

> This voucher has been issued pursuant to the Housing Choice Voucher Homeownership Program requirements of HUD and the PHA. The family has been pre-qualified for the program, and has attended a First-time Homebuyer's Orientation regarding the program. The family has signed the statement of family obligations, and agrees to abide by the applicable program requirements or face the of the [sic] loss of this assistance.

The Blums found a Lakewood home they were interested in purchasing, had it inspected in February 2016, and sent the report to the Tenants Organization. During the same month, after receiving the inspection report, the Tenants Organization's Homeownership Coordinator telephoned plaintiff Judy Blum and informed her that the home had failed inspection. When plaintiff asked what should be done, the coordinator allegedly replied, "anything that was 'marked in red' in the [home] inspection report needed to be repaired."

Plaintiff subsequently made repairs to the property and signed an agreement to purchase it for $350,000. Plaintiffs provided the Tenants Organization with a copy of the contract.

During the first week of March 2016, after plaintiffs had arranged for financing on the home, the Tenants Organization's Homeownership Coordinator left a voice mail with plaintiff Judy Blum, stating that plaintiff needed to contact the Monmouth County PHA. Plaintiff did so and was informed that the voucher Monmouth County PHA had issued in October 2015 had expired, and plaintiffs had never requested an extension.

A-1962-17T1

Within the next two days, plaintiff Judy Blum twice spoke with the Tenants Organization's Homeownership Coordinator, the first time in person, the second on the phone. During the in-person meeting, the coordinator told her everything was fine, but in a phone call the next day, the coordinator said the Tenants Organization could no longer proceed with the voucher because plaintiffs had failed to request an extension of the original voucher issued by Monmouth County PHA. The coordinator said that because no one had informed Monmouth County PHA that the Tenants Organization had issued a homeownership voucher rather than a rental voucher, and because the rental voucher had expired, Monmouth County PHA was unwilling to absorb the added cost. Plaintiffs proceeded with the purchase of the house without assistance and thereafter filed this action.

## II.

Defendants Monmouth PHA and Reznak moved to dismiss the complaint under Rule 4:69-6, requiring actions in lieu of prerogative writs to be filed within forty-five days of their accrual, and under Rule 4:6-2(e) for failure to state a claim on which relief can be granted. The remaining defendants joined in the motion. The trial court granted the motion and dismissed the complaint with prejudice.

11

Based on the motion papers, the trial court found undisputed that defendants were governmental agencies and that plaintiffs were appealing the denial of a governmental benefit, namely, the decision to deny them a Section 8 Housing Choice voucher subsidy due to expiration of the voucher. For that reason, the trial court concluded defendants were obligated to comply with Rule 4:69 by filing the complaint within forty-five days of the accrual of their cause of action.

The court noted the alleged cause of action accrued when Monmouth PHA denied their voucher due to the voucher's expiration. The Monmouth PHA denied the voucher on March 24, 2016. Allowing three days for mailing, the trial court concluded the cause of action accrued on March 27, 2016 "at the latest." Forty-five days elapsed on May 11, 2016. Plaintiffs did not commence the action until February 24, 2017, more than nine months later.

The court noted the several instances under Rule 4:69-6(c) that permitted relaxation "where it is manifest that the interest of justice so requires." The court determined that none of the exceptions applied.

In view of the court's determination, it dismissed the case with prejudice pursuant to Rule 4:69 and did not reach plaintiff's other arguments.

A-1962-17T1

## III.

On appeal, plaintiffs argue the trial court erred in dismissing their complaint under Rule 4:6-2(e) because, contrary to the trial court's opinion, they were not required to file a prerogative writs action within forty-five days as required by Rule 4:69. That is so because plaintiffs stated a cause of action under 42 U.S.C. § 1983 and the Housing Act. Plaintiffs argue their cause of action under 42 U.S.C. § 1983 is governed by the two-year statute of limitation for § 1983 claims, rather than the forty-five day limitation for actions in lieu of prerogative writs brought pursuant to Rule 4:69. Plaintiffs insist that in their complaint they stated two causes of action for violations of 42 U.S.C. § 1983. They add that under the Supremacy Clause of the United States Constitution, the forty-five-day period for filing claims under Rule 4:69 cannot bar federal claims filed under 42 U.S.C. § 1983 within two years of the accrual of their action.

Last, plaintiffs claim the trial court erred by dismissing their complaint when they sufficiently pled valid claims that defendants revoke their Section 8 Homeownership Voucher and thereby violated their rights governing portability of Section 8 vouchers in violation of procedural due process of law.

13

Defendants contend a complaint seeking review of an administrative agency's action is an action in lieu of prerogative writs. They insist that plaintiffs' identification in their complaint of defendants as public entities and the relief they sought – compelling defendant governmental entities to approve retroactivity to March 2016 of public benefits – clearly fall within a prerogative writs action. These defendants insist that the other "legal theories" plaintiffs have asserted are nothing more than "smoke screens to divert the [c]ourt's attention away from the real issue," namely that the lawsuit "is simply <u>an appeal of an administrative action of a governmental agency</u>."

Defendants add that plaintiffs violated <u>Rule</u> 4:69 by failing to designate their cause of action as one in lieu of prerogative writs. They add that the action accrued when Monmouth County provided them written notice on March 24, 2016, that the voucher would not be honored because it expired. Plaintiffs filed their complaint more than one year later, in violation of the forty-five-day limit for actions in lieu of prerogative writs.

IV.

A.

We begin with the principles that guide our review of the trial court's order. Motions to dismiss under <u>Rule</u> 4:6-2(e) "should be granted only in rare

14

instances and ordinarily without prejudice." Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 282 (2004). This standard "is a generous one." Green v. Morgan Props., 215 N.J. 431, 451 (2013).

> [A] reviewing court 'searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.' At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.
>
> [Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (internal citations omitted).]

Nonetheless, a court must dismiss a complaint if it fails "to articulate a legal basis entitling plaintiff to relief." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005.) "[A] pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assoc., LP v. Borough of Millstone, 423 N.J. Super. 103, 113-114 (App. Div. 2011) (citations omitted).

Our review of a trial court's order dismissing a complaint under Rule 4:6-2(e) is plenary. Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333,

A-1962-17T1

349 (App. Div. 2012). We apply the same standard as the trial judge. <u>Malik v. Ruttenberg</u>, 398 N.J. Super. 489, 494 (App. Div. 2008).

## B.

The complaint alleges five causes of action. In counts one and three, defendants allege causes of action under 42 U.S.C. § 1983. Plaintiffs have briefed those causes of action.

In the counts two and four through six, plaintiffs have alleged a violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, breach of contract, promissory estoppel, and equitable estoppel. They have not briefed the dismissal of these claims. "An issue not briefed on appeal is deemed waived." <u>Sklodowsky v. Lushis</u>, 417 N.J. Super. 648, 657 (App. Div. 2011) (citing <u>Jefferson Loan Co. v. Session</u>, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008); <u>Zavodnick v. Leven</u>, 340 N.J. Super. 94, 103 (App. Div. 2001)). Accordingly, we do not address these four causes of action.

## V.

We turn to plaintiffs' arguments that their § 1983 counts state claims with a two-year statute of limitations and should not have been dismissed as untimely under <u>Rule</u> 4:69. Preliminarily, we disagree with plaintiffs' assertion that defendants "revoked" their voucher. The complaint, the documents appended to

it, and the documents referenced in it, indisputably establish that the initial rental voucher issued by Monmouth PHA expired by its terms. No entity or person "revoked" it. Significantly, no entity or person informed anyone at Monmouth PHA that the Tenants Organization had issued a voucher for home ownership rather than rental.

Moreover, by its terms, the initial voucher created no obligation of Monmouth County PHA to plaintiffs to approve a tenancy. Rather, the voucher stated, "[t]he PHA does not have any liability to any party by the issuance of this voucher." In addition, the voucher stated: "The voucher does not give the family any right to participate in the PHA's housing choice voucher program. The family becomes a participant in the PHA's housing choice voucher program when the HAP contract between the PHA and the owner takes effect."

To prevail on a § 1983 suit based on a violation of the due process clause a plaintiff must allege and prove five elements:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

17

[Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989).]

Concerning Monmouth County PHA, plaintiffs' pleadings established the non-existence of two necessary elements of a § 1983 action. Their pleadings established they had no constitutionally protected property interest in the initial rental voucher. Not only did the voucher's express language negate such an interest, plaintiffs did not use it for its intended purpose, namely, to subsidize rental housing.

Nor was there any action on the part of Monmouth County PHA that deprived plaintiffs of any interest, let alone a property interest. As noted, the voucher issued by Monmouth County PHA expired by its terms. Plaintiffs relied on nothing said or done by any agent or employee of Monmouth County PHA. Insofar as Monmouth County PHA, its Executive Director, and its employees, there was simply no state action that deprived plaintiffs of a constitutionally protected liberty interest. Accordingly, the claim against Monmouth County PHA and its Executive Director was properly dismissed.

Concerning Lakewood, the Tenants Organization, and Meir Hertz, we reach the same result but for different reasons. The Tenants Organization issued a homeownership voucher to plaintiffs. Plaintiffs understood they would not be entitled to a Section 8 subsidy if the home they sought to purchase did not pass

18

inspection. Not only did the home they sought to purchase fail inspection, but plaintiffs were informed that the Tenants Organization had issued a voucher that could not be funded. Yet, plaintiffs chose to purchase the home that had failed inspection after they took it upon themselves to repair the items that had failed, obtained financing without Section 8 assistance, and proceeded with the purchase.

Plaintiffs had received no benefits under the Housing Act, and knew before they purchased the home they would receive no such benefits. Under those circumstances, we cannot conclude that action undertaken by Lakewood, the Tenants Organization, or the agents or employees of those entities deprived plaintiffs of a constitutionally protected property right.

We have considered plaintiffs' remaining arguments and have determined they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). In view of our disposition of plaintiffs' arguments, we need not address Monmouth County PHA's qualified immunity claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1962-17T1