THE PROVIDENT INSTITUTION FOR SAVINGS IN JERSEY CITY, PETITIONER-APPELLANT, v. DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT.

Argued March 8, 1960—Decided June 6, 1960,

586

*Mr. William E. Decker* argued the cause for petitioner-appellant.

*Mr. Herman D. Ringle* argued the cause for respondent.

The opinion of the court was delivered by

SCHETTINO, J.   This is an appeal from a ruling of the Division of Employment Security which held that certain individuals were employees of the petitioner and thus within the Unemployment Compensation Law.   While appeal was pending in the Appellate Division, we certified the matter on our own motion.

On appeal the parties agreed to submit the matter for determination on a stipulation of facts in lieu of the record pursuant to *R. R.* 4:88–8.   The following facts are contained therein.   Petitioner is a registered employer under the New Jersey Unemployment Compensation Law and as the result of an audit made in 1957, respondent made an assessment against it for supplemental contributions for the years 1954, 1955, 1956, and for the second quarter of 1957. The appeal herein was then filed.

Petitioner was incorporated in 1839 under an act of the Legislature and since about 1870 it has been governed by the General Savings Bank Act and particularly the last statute on the subject known as the Banking Act of 1948, *N. J. S. A.* 17:9A–188 *et seq.*   It is a mutual savings bank and has no stockholders as the assets of the bank are owned by the depositors.   All of the earnings of the bank are distributed to the depositors as dividends or interest. Under the act of incorporation and under the statute, Provident's business affairs are managed by a Board of Managers which group is self-perpetuating.   A vacancy is filled by an election held by the remaining Managers.

The present statute also provides for an Executive Committee. Each year the members of the Board of Managers designate four of their number to serve on the Executive Committee and those individuals and the bank president, who acts *ex officio,* constitute the Committee. The Board of Managers meets once a month. The Executive Committee meets once a week and, under the statute, between meetings of the Board of Managers exercises all the functions of the Board of Managers.

The issue presented is whether the services performed by the members of petitioner's Executive Committe constitute employment as defined by the Unemployment Compensation Law *(N. J. S. A.* 43:21–19(*i*)(1), (6) and (p))?

Each member of the Executive Committee receives $4,000 annually for his services on that Committee and receives $40 for attendance at each meeting of the Board of Managers. All members are engaged in businesses other than petitioner's when not performing services on the Executive Committee. They are paid by check of Provident every two weeks on the same day of the week. The Managers are paid their fee in cash at each meeting. Deductions are made from their Executive Committee checks for hospitalization and group life insurance in which the Committee members participate and for Christmas Club as directed. Petitioner contributes towards the group life insurance. All employees as well as the Committee members receive bonuses at the end of the year as determined by the Managers.

The duties of the Executive Committee include the operation of the bank between meetings of the Managers; the hiring and discharging of employees except officers; the management of the bank's real and personal property; the purchase and sale of investments on behalf of the bank; passing on and determining all loans, mortgages, and investments to be made; obtaining information relating to loan and mortgage applications; reviewing mortgage applications with the appraisal and mortgage department of the bank; examining the neighborhood where property is located;

hiring appraisers on mortgage applications of over $5,000 where property is located outside of Jersey City; examining properties on which applications are made for a loan on mortgages of $50,000 or more; obtaining information from bank employees as needed and from other bankers and investment services. All loans, mortgages and investments made by the Executive Committee are binding on the bank. In passing, we note that for its operation the Board of Managers must select from its membership a president and a vice-president. *N. J. S. A.* 17:9*A*–191.

Petitioner contended before respondent Board that the members of the Executive Committee are not employees but the employer itself and that there exists therefore no master and servant relationship. Respondent held that the Committee members performed "services" for petitioner for which they received remuneration under a contract of hire within the meaning of *N. J. S. A.* 43:21–19(*i*)(1) and that their services are necessary to maintain petitioner as a bank. Respondent stated:

"* * * As managers they performed purely ministerial and directorial duties, but as executive committee members they did more than that. Their services were beyond the scope of managerial and directorial duties. They did more than merely attend and participate in meetings of the board. The services rendered by the executive committee members were not of a purely ceremonial or formal nature required only for the maintenance of the corporate organization. In performing the services of the executive committee the members were not acting for themselves but for the bank. Since they receive a stated annual salary, in addition to managerial fees, they should be counted as in employment in each week of the year."

The pertinent statutory provisions of *N. J. S. A.* 43:21–19 (1956) read:

"As used in this chapter, unless the context clearly requires otherwise:
* * * * * * * *
(i) (1) 'Employment' means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, express or implied.
* * * * * * * *

(6) Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the division that

(A) such individual has been and will continue to be free from control or direction over the performance of such service both under his contract of service and in fact; and

(B) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) such individual is customarily engaged in an independently established trade, occupation, profession or business.

\*    \*    \*    \*    \*    \*    \*    \*

(p) 'Remuneration' means all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash."

The law (*R. S.* 43:21–1 *et seq.*) represents the policy of the State to further the welfare of the people by affording protection against the shocks and rigors of unemployment. *Boque Electric Co. v. Board of Review, etc., Dept. of Labor and Ind.,* 21 *N. J.* 431, 435 (1956). It is remedial and therefore should be liberally construed to accomplish its end, "with the result that the relation of employer and employee may be deemed to exist under circumstances which would not lead to that determination under the common-law classification." *Gilchrist v. Division of Employment Security,* 48 *N. J. Super.* 147, 153 (*App. Div.* 1957).

Similarly, in other jurisdictions we find broad meanings attributed to words used in this field. In *Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 *Colo.* 550, 88 *P. 2d* 560, 563 (*Sup. Ct.* 1939) the court observed that:

"\*    \*    \*    When defining or referring to 'wages,' 'employment,' 'employer' and 'benefits' in the act the legislature deliberately avoids the use of the word 'employee,' and uses the much broader term, 'individual.' That this indicates legislative intent as to who is covered, cannot be doubted. The terms 'independent contractor' or 'master and servant' nowhere appear. The act prescribes the statutory test \*    \*    \*   and we must not be led astray by any other criterion.    \*    \*    \*

\*    \*    \*    \*    \*    \*    \*    \*

> Here the statutory definition of 'employment' is broad and inclusive, and it cannot be so construed as to limit the meaning to the relationship of master and servant without violating the legislative intent."

Our Legislature has defined the conditions which create an employment relationship and the test laid down in the statute is very broad. Exemption from coverage where services are performed for remuneration exists only where the cumulative provisions of (6) (A) (B) and (C), known as the ABC test, are complied with, for "Unless all three tests are met, the service is to be considered employment subject to the act." *Electrolux Corp. v. Board of Review*, 129 *N. J. L.* 157, 159 (*E. & A.* 1942).

By reading the introductory provision of subsection (6) with the definitions interpolated into their proper positions, employment means personal service performed for all compensation (a) including commissions and bonuses and the cash value of all compensation in any medium other than cash or (b) under any contract of hire, written or oral, express or implied unless and until it is shown to the satisfaction of the Division that the exclusion from coverage applies. Thus, no matter what the relationship may be called or how careful the parties to it may be in their attempt to create the impression that it is something other than the statutory employment relationship, in reviewing a determination by the respondent Division, we will look through the form to the substance and determine whether the broad definition of employment is met and then determine whether it is exempt from coverage under the exclusionary provisions of the act. *Cf. Electrolux Corp., supra; Gilchrist, supra,* 48 *N. J. Super.,* at *pages* 153–154.

Petitioner alleges that there can be no employment unless there is an employer. The main thrust of the argument is that these individuals are subject to the control of no other person and therefore they are employers and cannot be considered employees. We consider the precise structure of the ownership and management of the bank.

As the stipulation indicates the depositors are the owners of all the assets. The Board of Managers is charged with control of all of the business affairs. The Executive Committee of this particular bank is charged with the administration of the day to day affair of running the business, including many duties and functions ordinarily performed by officers in other banks.

The services of the members of the Executive Committee are performed for remuneration for it is admitted that each member receives "$4,000 annually for his services." Were there any doubt that the Committee services rendered were of the type contemplated by the introductory statement of subsection (6), it is quickly dispelled when the list of activities required to be performed by the Committee members is examined. To summarize, they are comprised of activities on a plane just above the ordinary employees. These activities are supervisory in character but they are personal services of the most crucial type for without them there is no way that the petitioner can function day by day. Even if the activities are not continuously or daily engaged in by every Committee member, the employment relationship would still exist (assuming the other requisites present) for, a "readiness to serve may be employment and service." *Paramus Bathing Beach v. Division of Employment Security,* 31 *N. J. Super.* 128, 133 (*App. Div.* 1954). To analogize to the more common corporate structure the members of the Committee are in fact executive officers charged with the daily administration of the business. As was noted in *Paramus Bathing Beach, supra,* at *page* 132:

"We recognize that a corporation is a separate and independent entity, and that its officers are customarily its agents and servants under whose stimulus and dictation and through whose activities the corporate business is conducted. *Cf. Finston v. Unemployment Compensation Commission,* 132 *N. J. L.* 276 (*Sup. Ct.* 1944), affirmed *Naidech v. U. C. C. of New Jersey,* 134 *N. J. L.* 232 (*E. & A.* 1946). Such an engagement in which the officer actively participates would seem to constitute the rendition of a service for and on behalf of the corporation. The intimation that the relationship of em-

ployer and employee cannot exist between a corporation and its officers is unrealistic."

As noted above it is not necessary to find all of the requisites of the common-law employer-employee relationship for coverage under the act. *Gilchrist, supra.*

The petitioner also challenges respondent's finding that the Committee members were employees on the ground that the requirement of a "contract of hire, written or oral, express or implied" stated in subsection (i)(1) was not present. As individuals are presumptively covered if they perform personal service for any form of compensation *or* if they perform service under a contract of hire, the finding that they come within the first test obviates any need to consider whether there was a contract of hire. We pause only to note that the term "contract of hire" need not be given a technical meaning (*Texas Co. v. Wheeless*, 185 *Miss.* 799, 187 *So.* 880 (*Sup. Ct.* 1939)) for the act must be construed to effectuate the declared public policy of providing security against unemployment which the Legislature has declared to be the "greatest hazard of our economic life." *R. S.* 43:21–2.

Petitioner additionally contends that the members of the Executive Committee act as an entity, that this entity exercises powers of management and is therefore part of management by statute and by corporate practice. We cannot agree with this reasoning. We note with approval the language in *Social Security Board v. Warren*, 142 *F.* 2d 974, 977 (8 *Cir.* 1944). There, the court pointed out that some of the duties performed by the Executive Committee might have been performed by an ordinary agent because they were routine matters and that had any such service been performed by an agent or managing officer for compensation, there could be no doubt that a finding by the Board that such compensation was wages and that the relation of employer and employee existed would have been conclusive upon the courts. We quote:

"\* \* \* *Such committees may be composed of members of the board of directors or of other officers or employees.* Nor is the power to require the members of such committees in matters requiring an exercise of discretion limited to acts subject to the approval of a majority. The relation of employer and employee does not depend upon whether the authority is conferred upon a committee or an individual. It depends upon whether the board of directors has a right to control the performance of the duty and whether its performance is compensated for in wages. Clearly the individual members of a committee may be found to be employees of a corporation when such committee is authorized for compensation to audit books and bills, or to perform any services useful or necessary in carrying on the business of the corporation." (Emphasis added)

We hold similarly that the members of petitioner's Executive Committee were covered by the introductory clause of subsection (6). As there is no serious contention made by petitioner that the individuals are removed from coverage by virtue of the ABC test, we need not discuss these provisions at length. We merely observe that, as the individuals must fit within the requirements of all three provisions in order to be excluded, persons who are executives and responsible for the day to day functioning of the petitioner's institution cannot be beyond this law. See *Paramus Bathing Beach, supra,* in which it was held that the president, vice-president, secretary and treasurer of a corporation were employees under the Unemployment Compensation Law.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.