**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3313-16T1

RAYMOND VERAS, on
behalf of himself and
all other similarly
situated persons,

      Plaintiff-Appellant,

v.

INTERGLOBO NORTH
AMERICA, INC., and
INTERGLOBO LOGISTICS, LLC,

      Defendants-Respondents.

_____

Argued telephonically September 12, 2018 – Decided October 29, 2018

Before Judges Rothstadt and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3191-16.

Ravi Sattiraju argued the cause for appellant (The Sattiraju Law Firm, PC, attorneys; Ravi Sattiraju, of counsel and on the briefs; Anthony S. Almeida, on the briefs).

Francesco Di Pietro (Moses & Singer, LLP) of the New York bar, admitted pro hac vice, argued the cause for respondents (Moses & Singer, LLP, attorneys; John V. Baranello, on the brief).

PER CURIAM

Plaintiff Raymond Veras appeals from the Law Division's December 16, 2016 order dismissing his "class action complaint" under Rule 4:6-2(e), and March 3, 2017 order denying reconsideration. The complaint asserted claims under the New Jersey Wage and Hour Law (WHL), N.J.S.A. 34:11-56(a) to -56(a)38, and the New Jersey Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14, against defendants, Interglobo North America Inc. (INA) and Interglobo Logistics, LLC (ILLLC). In his complaint, plaintiff alleged that defendants employed him and other members of the putative class as "truck drivers and/or deliverers" for defendants' freight forwarding businesses. In response to the complaint, defendants filed a motion to dismiss, contending plaintiff did not have standing to sue, relying upon a June 2014 signed agreement between ILLLC and plaintiff's company, a Florida corporation formed in 2006, for the services plaintiff alleged he provided as an employee of defendant.[1] After

---

[1] This information was provided through the two certifications filed in support of the motion. One certification, dated January 12, 2016, was from one of defendants' officers, which notified the court about the agreement and described

considering the terms of the agreement, the motion judge dismissed the complaint without prejudice[2] after finding that the matter was a contract dispute and that plaintiff did not have an individual right to assert his claims against defendants. The same judge denied plaintiff's motion for reconsideration. This appeal followed.

On appeal, plaintiff asserts that in dismissing his complaint, the motion judge failed to appreciate that the wage laws upon which plaintiff relied were "humanitarian pieces of legislation that must be construed liberally." He also argued that by treating plaintiff's claims as a contract dispute, the motion judge failed to apply the Supreme Court's holding in Hargrove v. Sleepy's LLC, 220 N.J. 289 (2015), relating to "employment-status disputes." For the reasons that follow, we reverse.

---

plaintiff's company's obligation to perform services under the agreement. The other was defendants' counsel's October 18, 2016 certification that provided information about plaintiff's company's incorporation in Florida. No other facts were presented to the court.

[2] Despite the "without prejudice" designation, we are satisfied that the order disposed of all claims between the parties to this dispute, as no amendment to the complaint could remove the impediment to proceeding as determined by the motion judge. See Silviera-Francisco v. Bd. of Educ. of City of Elizabeth, 224 N.J. 126, 136 (2016).

"We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014).  At the outset, the standard of our review for dismissal of a complaint under that rule, is whether the pleadings even "suggest[]" a basis for the requested relief.  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).  As a reviewing court, we assess only the legal sufficiency of the claim.  Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). Consequently, "[a]t this preliminary stage of the litigation [we are] not concerned with the ability of plaintiffs to prove the allegation contained in the complaint."  Printing Mart, 116 N.J. at 746.  Rather, we accept the factual allegations as true, Sickles, 379 N.J. Super. at 106, and "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim[.]'"  Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div.1957)).  "However, we have also cautioned that legal sufficiency requires allegation of all the facts that the cause of action requires."  Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012).  In the absence of such

allegations, the claim must be dismissed. <u>Ibid.</u> (citing <u>Sickles</u>, 379 N.J. Super. at 106).

According to defendants here, our application of the standard governing consideration of a motion to dismiss under the <u>Rule</u> and of the contract upon which defendants relied, should lead us to the same conclusion that the motion judge reached – plaintiff did not have standing to bring this action. We disagree.

Whether a party has standing to pursue a claim is a question of law subject to our de novo review. <u>People For Open Gov't v. Roberts</u>, 397 N.J. Super. 502, 508 (App.Div.2008) (citing <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995) ("The issue of standing is a matter of law as to which we exercise de novo review.")). We therefore accord no "special deference" to the "trial court's interpretation of the law and the legal consequences that flow from established facts." <u>Manalapan Realty</u>, 140 N.J. at 378; <u>Cherokee LCP Land, LLC v. City of Linden Planning Bd.</u>, __N.J. __, __ (2018) (slip op. at 7).

Turning to plaintiff's complaint, there was no dispute that it stated sufficient facts that, if proven, established plaintiff's standing to pursue his claims as an employee under the wage laws he specifically pled. In his complaint, plaintiff alleged that as part of his employment with defendants, he

was "assigned to perform non-exempt tasks" in the trucking and delivery of freight for defendant. He alleged that defendants "controlled the manner and means" in which he performed his duties, and that he worked from defendants' "Jersey City location," received directions from defendants and their employees, was required to wear defendants' companies' uniforms, and "handled paperwork and invoices with [d]efendants' customers." Moreover, he was subject to defendants' having the right to discipline and even terminate plaintiff from his employment.

The complaint also described how defendants handled plaintiff's compensation, including their having funds withdrawn from his pay to reimburse defendants for items such as "truck insurance and gas." Moreover, he asserted that he "routinely worked far in excess of forty (40) hours per week," but did not receive overtime pay as required by law. According to plaintiff, defendants' failure to properly compensate him gave rise to his claims under the WPL and WHL.[3] However, plaintiff's complaint made no mention of the

---

[3] The WPL "governs the time and mode of payment of wages due to employees." Hargrove, 220 N.J. at 302. "The WHL is designed to 'protect employees from unfair wages and excessive hours.'" Id. at 304 (quoting In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009)). As the Court explained in Hargrove,

agreement between ILLLC and plaintiff's company.  Plaintiff only alleged that defendants "misclassified [him] as an independent contractor[.]"

It was undisputed that on June 13, 2014, ILLLC and J&K Trucking Solution, Inc. (J&K), a Florida corporation owned by plaintiff, entered into a "Contractor Lease Agreement" (CLA).  The CLA required J&K to make deliveries for ILLC.  It stated that J&K is "an independent delivery operator with [its] own vehicle, equipment, employees[.]"  The agreement specifically stated the following:

> [B]oth [ILCC] and Contractor acknowledge and agree that [J&K] is an independent contractor and that <u>he</u> shall have the sole and complete discretion to hire, regulate, discipline or discharge all personnel engaged by the Contractor to carry out the Contractor's obligations hereunder and to determine the manner and method in which such obligations shall be performed[.]

> [Both] address the most fundamental terms of the employment relationship.  The WPL is designed to protect an employee's wages and to assure timely and predictable payment.  To that end, it directs the mode and time of payment.  The WHL . . . establishes a minimum wage for employees and the overtime rate for each hour of work in excess of forty hours in any week.

> [<u>Id.</u> at 313 (citations omitted).]

As remedial statutes, "any question regarding the[ir] scope and application [requires us to be] mindful of the need to further [their] remedial purpose[s]." <u>Id.</u> at 304.

A-3313-16T1

(Emphasis added).

Additionally, the CLA stated J&K must pay all expenses incurred in the operation of "his business" including rent, wages, overhead, maintenance and repair of vehicles, insurance, etc. The CLA obligated J&K to furnish at least one vehicle to be used for deliveries for ILLLC and that the vehicle must be operated by a licensed driver.

Against this background, plaintiff argues to us that at this stage of the litigation, the mere existence of the CLA should not be the basis for the dismissal of his complaint. Citing to the Supreme Court's opinion in Hargrove, plaintiff contends that despite the agreement, he was defendants' employee as contemplated by the WHL and WPL. Defendants contend Hargrove is inapplicable because the plaintiffs in that case individually signed an "Independent Driver Agreement [(IDA)]" directly with the defendant, who classified them as independent contractors. Here, defendants contend that plaintiff did not have the same individual relationship. Under these circumstances, according to defendants, courts may not apply the test in Hargrove before determining who employed a plaintiff. Defendants contend that Hargrove's contractor/employee inquiry would apply only to plaintiff's

relationship with J&K because there is no question that company employed plaintiff. We disagree.

Defendants' contentions are factually and legally incorrect. First, Hargrove included claims by some plaintiffs who, like plaintiff here, entered into independent contractor agreements through companies they owned or controlled.[4] Second, even under defendants' legal argument, the dismissal of plaintiff's complaint at this stage, based solely on defendants' contract with plaintiff's company, was premature because the issue's resolution required additional evidence relating to whether, despite his company's agreement, plaintiff was actually employed by defendants for WHL and WPL purposes.

Neither party disputes that Hargrove "address[ed the] test for a plaintiff's employment status for purposes of [WPL and WHL]" claims. Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 589 (2015). In Hargrove, the Court held "that any employment-status dispute arising under the

---

[4] Hargrove came before the Court in response to "a question of law certified and submitted by the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-1." Hargrove, 220 N.J. at 295. As described by the Third Circuit in its "Petition for Certification of Question of Law," several plaintiffs who asserted WHL and WPL claims had entered into "IDAs with Sleepy's, either on behalf of business entities they controlled or on behalf of themselves." Hargrove v. Sleepy's, LLC, Nos. 12-2540, 12-2541, 2013 U.S. App. LEXIS 26204, at *3 (3d Cir. May 22, 2013) (Emphasis added).

WPL and WHL should be resolved by utilizing the 'ABC' test set forth in N.J.S.A. 43:21-19(i)(6)(A)-(C)." Hargrove, 220 N.J. at 312.

> The "ABC" test provides an analytical framework to decide whether a person . . . seeking the protection of . . . the WHL or . . . the WPL is an independent contractor or an employee. It presumes that the claimant is an employee and imposes the burden to prove otherwise on the employer.
>
> [Id. at 314.]

The "ABC test," a "long-standing approach to resolving employment-status issues," id. at 316, refers to the three subparagraphs—(A), (B), and (C)—in N.J.S.A. 43:21-19(i)(6), which define "employment" for purposes of the Unemployment Compensation Law (UCL). See N.J.S.A. 43:21-19(i)(6); Carpet Remnant Warehouse, Inc. v. New Jersey Dep't of Labor, 125 N.J. 567, 580-87 (1991) (applying the "ABC test" to determine employment and eligibility for unemployment compensation).

The ABC test is used to determine if a worker is an employee or independent contractor. N.J.S.A. 43:21-19(i)(6). "The 'ABC' test presumes an individual is an employee unless the employer can make certain showings regarding the individual employed[.]" Hargrove, 220 N.J. at 305. This test is set forth in the UCL as follows:

A-3313-16T1

Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter ([N.J.S.A. 43:21-1 to -71]) unless and until it is shown to the satisfaction of the division that:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

[N.J.S.A. 43:21-19(i)(6).]

See also Hargrove, 220 N.J. at 305.

Part A is referred to as the "control test," Part B as the "course-of-business or location-of-work test," and Part C as the "independent-business test." Phila. Newspapers, Inc. v. Bd. of Review, 397 N.J. Super. 309, 320 (App. Div. 2007). It is up to the employer to prove each of the three prongs of the ABC test, and if each element is not met, then the claimant is an employee and is not an independent contractor. Hargrove, 220 N.J. at 305.

In Hargrove, the Court explained the considerations under each part as follows:

> In order to satisfy part A of the "ABC" test, the employer must show that it neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work. In establishing control for purposes of part A of the test, it is not necessary that the employer control every aspect of the worker's trade; rather, some level of control may be sufficient.
>
> Part B of the statute requires the employer to show that the services provided were "either outside the usual course of the business . . . or that such service is performed outside of all the places of business of the enterprise." N.J.S.A. 43:21-19(i)(6)(B). While the common law recognizes part B as a factor to consider, it is not outcome determinative within the confines of the "right to control" test.
>
> Part C of the statute is also derived from the common law. This part of the test "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship. The enterprise must be one that is stable and lasting—one that will survive the termination of the relationship." Therefore, part C of the "ABC" test is satisfied when an individual has a profession that will plainly persist despite the termination of the challenged relationship. When the relationship ends and the individual joins "the ranks of the unemployed," this element of the test is not satisfied.
>
> [Id. at 305-06 (citations omitted).]

In undertaking the ABC test's analysis, a court is not limited to the terms of the contract between the parties. Whether an individual is an employee "should not be determined under the [a]greement alone, but rather on all facts surrounding [the individual's] relationship with [the employer], including the [a]greement. To consider only the [a]greement, and not the totality of the facts surrounding the parties' relationship, would be to place form over substance." Phila. Newspapers, Inc., 397 N.J. Super. at 321. This is a "fact-sensitive" analysis where the substance, not the form of the relationship, is reviewed. Carpet Remnant Warehouse, 125 N.J. at 581-82. See also Provident Inst. for Sav. v. Div. of Employment Sec., 32 N.J. 585, 591 (1960); Trauma Nurses, 242 N.J. Super. 135, 142 (App. Div. 1990). "[W]e are obliged to look behind contractual language to the actual situation—the status in which parties are placed by relationship that exists between them." Trauma Nurses, 242 N.J. Super. at 142 (citations omitted). "[N]o matter what the relationship may be called or how careful the parties to it may be in their attempt to create the impression" that an employment relationship did not exist, the court must "look through the form to the substance" to determine if it is exempt from the WPL and WHL. Provident Inst. for Sav., 32 N.J. at 591.

While defendants recognize that if plaintiff individually entered into an agreement with defendants, <u>Hargrove</u> would apply, they argue that because plaintiff signed the agreement on behalf of his company, he needed to first establish that defendants, as compared to J&K, were his employers before a court could apply the ABC test. Defendants contend that the "economic realities test," relied upon in unpublished federal court cases, applies to the determination of who is the employer that is necessary before considering whether an employee is an independent contractor. The application of that test to WHL and WPL claims where an employer argues that a claimant is an independent contractor was specifically rejected by the Court in <u>Hargrove</u>, 220 N.J. at 310-12, 314-15.[5]

---

[5] In rejecting this test the Court stated the

> test utilizes a totality-of-the-circumstances framework guided by six criteria. No one factor is determinative. Rather, the test contemplates a qualitative rather than a quantitative analysis of each case. Such a test may then yield a different result from case to case. By contrast, requiring each identified factor to be satisfied to permit classification as an independent contractor, the "ABC" test fosters the provision of greater income security for workers, which is the express purpose of both the WPL and WHL.
>
> [<u>Hargrove</u>, 220 N.J. at 314-15 (citations omitted).]

However, even if "the economic realities test" applied, dismissal of the complaint at this stage was not warranted based solely on the CLA. The "economic realities test" is borrowed from the federal Fair Labor Standards Act, which contains virtually identical definitions of "employer" and "employee" as the definitions in the WHL. Under "the economic realities test," courts must examine the totality of the circumstances to determine whether the economic realities of the situation indicate that an employment relationship existed. Relevant factors include: (1) who hired and fired the workers, (2) who controlled and supervised the workers, (3) who determined the workers' salaries, and (4) who maintained the workers' employment records. Courts have examined a range of other factors including who furnished the workers' equipment, whether the workers received benefits, and the intention of the parties.

Examination of any of these factors is fact-intensive, which is why "the question of a worker's employment status is a matter that is often determined by trial judges and juries" after considering all of the evidence relating to the issue, not just the parties' contract. Kotsovska, 221 N.J. at 588. It is rare for a court to determine a worker's status on summary judgment after discovery is completed. It is even more unlikely that the issue can be resolved on the pleadings alone.

15

Because we conclude that the Law Division's entry of the order of dismissal was in error, we need not address plaintiff's argument regarding the denial of his motion for reconsideration.

Reversed and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3313-16T1