NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2467-19

EAST BAY DRYWALL,
LLC,

      Petitioner-Appellant,

v.

DEPARTMENT OF LABOR
AND WORKFORCE
DEVELOPMENT,

      Respondent-Respondent.

_____

> APPROVED FOR PUBLICATION
>
> **April 20, 2021**
>
> APPELLATE DIVISION

Argued March 1, 2021 – Decided April 20, 2021

Before Judges Sabatino, Currier and Gooden Brown.

On appeal from the New Jersey Department of Labor and Workforce Development, Docket No. 17-019.

Russell L. Lichtenstein argued the cause for appellant (Cooper Levinson, PA, attorneys; Russell L. Lichtenstein and Jennifer B. Barr, on the briefs).

Achchana Ranasinghe, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Achchana Ranasinghe, on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This administrative agency case concerns the application of the so-called "ABC Test," N.J.S.A. 43:21-19(i)(6)(A), (B), and (C), in classifying whether a company's service providers are either its employees or, conversely, independent contractors, for purposes of liability for contributions to the state unemployment and temporary disability compensation fund.

As detailed in this opinion, the parties' dispute arose out of an audit of records conducted by the Department of Labor and Workforce Development ("the Department"). Based on that review, the auditor concluded that about half of the drywall installers who provided services for appellant East Bay Drywall, LLC ("East Bay") during the pertinent years of 2013-16 had been improperly classified as independent contractors rather than as East Bay's employees. With respect to those misclassified installers, the auditor calculated that East Bay owed the Department for unpaid contributions to the fund.

East Bay disputed the auditor's findings of misclassification, and the contested case was tried in the Office of Administrative Law ("OAL") before an administrative law judge ("ALJ"). Applying the legal standards of the ABC Test, the ALJ concluded three of the individual installers had been misclassified by East Bay as independent contractors. However, the ALJ found that other

installers who had formed and operated corporations or limited liability companies ("LLCs") during the audit period could not, as a matter of law, be deemed employees of East Bay in this regulatory context. Consequently, the ALJ rejected the auditor's findings except for the three individuals.

On further review, the Commissioner of the Department issued a final agency decision on January 13, 2020, reinstating in full the auditor's findings, thereby making East Bay liable for $42,120.79 in unpaid contributions to the fund, plus penalties and interest. East Bay now appeals the Commissioner's rulings.

For the reasons that follow, we affirm in part, reverse in part, and remand for recalculation of the amounts owed, consistent with this opinion.

I.

Before delving into the facts and evidence, we first briefly discuss the relevant legal context, including the ABC Test for ascertaining employee/non-employee status.

The Department administers the New Jersey Unemployment Compensation and Temporary Disability Insurance Laws (the "UCL"), N.J.S.A. 43:21-1 to -71. The "primary objective of the UCL is to provide a cushion for the workers of New Jersey 'against the shocks and rigors of unemployment.'"

Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 581 (1991) (quoting Provident Inst. for Sav. in Jersey City v. Div. of Emp't Sec., 32 N.J. 585, 590 (1960)). The Department collects revenue to fund this benefits program through contributions made by New Jersey employers and employees. The employer and employee must each contribute a specified percentage of the employee's wages to the fund. N.J.S.A. 43:21-7. In addition, a worker who is classified as an employee rather than as an independent contractor may collect unemployment benefits, if otherwise eligible and not otherwise disqualified. See generally N.J.S.A. 43:21-5 (concerning disqualification criteria); N.J.S.A. 43:21-14 (concerning eligibility conditions).

The UCL statute is remedial in nature and has been liberally construed to achieve its purposes. Carpet Remnant, 125 N.J. at 581.

An important predicate for determining whether a business or individual is responsible for making payments into the UCL fund for workers is whether there is a "statutory" employer-employee relationship between the workers and the business or individual that engages them. Ibid. Such a statutory employer-employee relationship may potentially exist even if the relationship does not satisfy common-law principles of employment. Ibid. (citing Gilchrist v. Div. of Emp't Sec., 48 N.J. Super. 147, 153 (App. Div. 1957)).

Under the UCL statute, "employment" consists of any service performed for remuneration or under any contact of hire, written or oral, express or implied. N.J.S.A. 43:21-19(i)(1)(A). Once it has been established that a worker's service has been performed for remuneration, that service is deemed to be employment, unless statutory criteria, commonly referred to as the "ABC Test," are all satisfied to establish non-employee status. N.J.S.A. 43:21-19(i)(6).

Specifically, the ABC Test prescribes that, for purposes of the UCL, an arrangement in which an individual performs services for remuneration is considered employment "unless and until" the following three requirements are proven:

> (A)    Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B)    Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C)    Such individual is customarily engaged in an independently established trade, occupation, profession or business.

A-2467-19

[N.J.S.A. 43:21-19(i)(6)(A), (B), and (C) (emphasis added).]

These three facets of the test (A, B, and C) have been explained by the Supreme Court in Carpet Remnant as follows.

"Part A of the [ABC] test requires a showing that the provider of services 'has been and will continue to be free from control or direction over the performance of such services.'" Carpet Remnant, 125 N.J. at 582 (quoting N.J.S.A. 43:21-19(i)(6)(A)). "The person must establish not only that the employer has not exercised control in fact, but also that the employer has not reserved the right to control the individual's performance." Ibid. "An employer need not control every facet of a person's responsibilities, however, for that person to be deemed an employee." Ibid.

"Part B of the ABC test is satisfied by a showing either that the services performed are outside the employer's usual course of business or that the service is performed outside of all of the employer's places of business." Id. at 584 (emphasis added). "[S]atisfaction of either of the B standard's alternatives is a prerequisite for avoiding designation as an employee." Ibid. (citing N.J.S.A. 43:21-19(i)(6)(B)).

"Part C of the ABC test is also inherited from the common law." Id. at 585. Citing Gilchrist, the Court explained that part C's requirement that a person

6

be customarily engaged in an independently-established business "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship. The enterprise must be one that is stable and lasting—one that will survive the termination of the relationship." Ibid. (quoting Gilchrist, 48 N.J. Super. at 158). "Thus, if the person providing services is dependent on the employer, and on termination of that relationship would join the ranks of the unemployed, the C standard is not satisfied." Id. at 585-86. "Conversely, the C standard is satisfied when a person has a business, trade, occupation, or profession that will clearly continue despite termination of the challenged relationship." Id. at 586.

The application of these three ABC criteria is highly fact-sensitive. In Carpet Remnant, for example, the Court reversed the Commissioner's finding of employee status concerning workers who performed carpet installations for the appellant company. Disagreeing with the Commissioner's findings under parts A and B, the Court held those workers were not employees because they were not, under part A, subject to the control of the company who had hired them, and also because, as to part B, they had installed the carpeting at the locations of individual customers rather than at the appellant's business office. Id. at 590-93.

7

The Court in <u>Carpet Remnant</u> cited with approval, <u>see</u> <u>id.</u> at 583-84, a then-recent opinion of this court in <u>Trauma Nurses, Inc. v. Bd. of Rev.</u>, 242 N.J. Super. 135 (App. Div. 1990), applying the ABC Test. We held in <u>Trauma Nurses</u> that nursing professionals who were placed by an employment broker with hospitals and other health care facilities on a temporary basis were independent contractors and not the broker's employees. Among other things, with respect to part A of the test concerning the element of control, "the nurses were free to choose where and when to work, including working for other brokers or independently," "not obligated to comply with any rules, practices, or procedures set by [the broker]," that the broker "exercised no supervision over the nurses . . . [and] provided no training," that the broker "furnished no supplies, equipment, or uniforms," that the broker "did not provide any fringe benefits," and that "the nurses were responsible for their own insurance coverage." <u>Id.</u> at 584 (citing <u>Trauma Nurses</u>, 242 N.J. Super. at 144–45).

More recently, in <u>Hargrove v. Sleepy's, LLC</u>, 220 N.J. 289 (2015), the Court ruled that the ABC Test is the applicable legal standard for determining employee status under the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 and the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a. Although the Court in <u>Hargrove</u> was not required to resolve any factual issues because it was

simply answering an abstract legal question referred by the federal courts pursuant to Rule 2:12A-1, the Court did reiterate the basic principles of the ABC Test set forth and applied previously in Carpet Remnant and in Trauma Nurses. Id. at 305-06.

II.

With this backdrop in mind concerning the ABC Test, we summarize the facts and procedural history of this matter.

East Bay's Business Operations & The Department's Audit

East Bay, a partnership, is a drywall installation business in New Jersey that utilized various parties to perform drywall installation and taping. East Bay obtained their services based on need and availability.

Installers were compensated for the work completed, and East Bay issued them IRS Forms 1099-MISC ("1099") for tax reporting purposes. Form 1099 is used when payments are made to what is purported to be an independent contractor. Subject to an analysis under the ABC Test, a company making payments evidenced by 1099s generally is not required to make unemployment-compensation and temporary-disability contributions.

As found by the ALJ, all of the drywall work performed by the installers used by East Bay was performed at locations determined by the builder. East

9

Bay did not own or control those locations. East Bay did not instruct the installers on how to perform the work or how many persons they should use to complete the job in the timeframe provided by the builder.

East Bay did not supply the installers with any tools, but did provide the raw materials such as sheetrock and tape. The installers brought to the job sites their own ladders, scaffolding, stilts, chalk lines, electric tools, planks, and other tools required to complete the work. Other than delivering and reviewing the blueprints, East Bay did not control or direct the performance of the installers.

A Department auditor conducted a routine audit of East Bay between January 17, 2017 and April 6, 2017. Based on his review, the auditor determined that about half of the drywall installers that had received 1099s from East Bay were bona fide independent contractors under the ABC Test, and therefore East Bay owed no UCL contributions for those installers. However, the auditor concluded the remaining sixteen installers were "non-bona fide" entities and should have been classified as employees of East Bay during one or more of the audit years 2013, 2014, 2015 and 2016.

Of the sixteen alleged non-bona fide providers identified by the auditor, four were individuals listed by name and the remaining twelve were business entities. In the course of his review, the auditor sent letters to those twelve

10

business entities in February 2017 but did not receive any responses. All twelve of the businesses had ceased operations prior to the audit. Based on the lack of response, the auditor concluded there was insufficient information to determine that any of those twelve business entities were bona fide subcontractors eligible for 1099 status.

Of the four individuals the auditor classified as non-bona fide subcontractors, the auditor was able to correspond with two of them. One such person, Dan Martin, responded to the auditor by supplying a Schedule C, "Profit and Loss from Business" tax return form for 2015. The Schedule C form stated that Martin did not have any other clients other than East Bay in 2015. Consequently, the auditor deemed Martin was not truly independent, and not a bona fide subcontractor for the audit period. Another one of the individuals, Ami Serra, spoke to the auditor and acknowledged that he did not operate a business.

As a result of these audit findings, the Department initially assessed East Bay $42,120.79 for unpaid unemployment compensation and temporary disability contributions, plus interest and penalties.

The OAL Hearing & the ALJ's Initial Decision

East Bay challenged the auditor's findings with respect to the business entities he had classified as its employees. The dispute was transmitted to the OAL for hearing as a contested case. The ALJ presided over two days of hearings in February and March 2019.

Benjamin DeScala, the managing member of East Bay, testified for appellant. DeScala described in depth the nature of East Bay's operations and its interactions with the drywall installers. The ALJ accepted DeScala's testimony as "credible and truthful."

According to DeScala, once East Bay secured a contract with a builder, he would then contact providers to see if they wished to install the drywall for that customer, based on need and availability. Sometimes an installer would pass up the opportunity, for reasons such as a conflicting project timeline or the location was too far away. In situations where an installer accepted the work, DeScala would verify that the installer was an independent business entity by obtaining and reviewing its Certificate of Insurance.

The other witness who testified before the ALJ was the auditor. He acknowledged that he did not issue any subpoenas in his investigation because he believed that East Bay had provided all the records required to perform the

audit. The auditor's written report was moved into evidence, and he explained the steps he had taken in his review and the bases for his findings.

The core issue before the ALJ was whether the personnel in question qualified as employees of East Bay within the meaning of the ABC Test. After sifting through the testimony and the various exhibits, the ALJ found there was "no evidence that any of the independent contractors deemed non-bona fide [by the auditor] were treated any differently from an operational standpoint than those [the auditor] deemed bona fide." Guided by the relevant case law, statutes and regulations, the ALJ concluded that all of the installers satisfied all three parts of the ABC Test (i.e., A, B, and C) except for Ami Serra, Dan Martin, and Kyle Cuevas.

The ALJ reasoned that all of the installers in question satisfied part A because they were not under East Bay's control, nor did they take instruction or tools from East Bay to complete the jobs. Additionally, the ALJ found that all of the installers at issue satisfied part B because the work was completed at the customers' job sites and not East Bay's place of business.

Lastly, under part C, the ALJ found East Bay had provided sufficient business entity information to demonstrate that, apart from the three individuals mentioned above, the installers were all "viable entities that existed

A-2467-19

independently of and apart from the particular service relationship with East Bay." As to the three individuals who did not qualify: Dan Martin failed part C because he had no other source of income; Ami Serra failed part C because he did not operate a business; and Kyle Cuevas also failed part C because there was no evidence provided by East Bay about him or his role with East Bay.

Accordingly, the ALJ reversed the Department's contribution liability assessment for the installers as to which there was sufficient evidence showing they were independent business entities but affirmed the Department's assessment for the remaining three individuals (Martin, Serra, and Cuevas).

The Commissioner's Final Agency Decision

After considering written exceptions to the ALJ's ruling, the Commissioner issued on January 13, 2020 a final agency decision that reversed the ALJ and reinstated the auditor's findings. The Commissioner concurred with the auditor's classification of sixteen installers as non-bona fide independent contractors, and agreed those installers should have been classified as employees of East Bay.

East Bay appeals, arguing the Commissioner's decision misapplies the ABC Test and is not consistent with the evidence adduced before the ALJ.

III.

In reviewing this matter, we are mindful that appellate review of administrative agency decisions generally affords substantial deference to the agency's expertise.  We ordinarily defer to the agency's findings if they are supported by substantial credible evidence in the record.  Carpet Remnant, 125 N.J. at 587; Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988).  That said, we are "in no way bound" by an agency's legal determinations.  Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973); see also Allstars Auto Group, Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018).  The "policies that require us to view with deference the decisions of administrative agencies and to liberally construe remedial social legislation do not compel us to blindly sustain a clearly erroneous result."  Trauma Nurses, 242 N.J. Super. at 142.  Indeed, the Supreme Court's opinion in Carpet Remnant and our opinion in Trauma Nurses, which we discussed above in Part I of this opinion, illustrate that we will reverse the Department's misapplication of the ABC Test where its reasoning is legally flawed.

Three of the twelve companies classified by the auditor and the Commissioner as "non-bona fide" independent contractors were limited liability companies headed by a single member, specifically Force 1 Drywall, LLC;

15

AMA Construction, LLC, and Serra Drywall, LLC.[1]  A pivotal aspect of the Commissioner's decision with respect to those three LLCs was his reliance on a New Jersey statute, N.J.S.A. 42:2C-92, and a state administrative regulation, N.J.A.C. 12:16-11.2, as well as certain federal tax provisions.  In particular, the Commissioner observed that "under pertinent State and Federal law and regulations, single-member LLCs are treated as 'disregarded' entities for the purpose of employment tax liability and are properly classified by their tax filing status with the IRS [Internal Revenue Service]."  This observation, respectfully, is an overstatement, and does not control the outcome here under the ABC Test.

N.J.S.A. 42:2C-92 is a tax statute.  Subsection (b) of that statute provides that "[f]or all <u>purposes of taxation on income under the laws of this State and only for those purposes</u>," a single-member LLC formed in New Jersey or qualified to do business in this State as a foreign LLC "is disregarded as an entity separate from its owner, unless classified otherwise for federal tax purposes . . . ."  (Emphasis added).

---

[1]  The record refers to both a Serra Drywall, LLC, operated by Dennis Serra, and an individual named Ami Serra.  The exhibits show that Ami Serra admitted to the auditor that he does not operate a business.  It appears he is not an owner or principal of Serra Drywall, LLC.

The statutory provision plainly is limited to the treatment of "single member limited liability companies as sole proprietorships for State income tax purposes unless the company is classified otherwise for federal income tax purposes." Stanard v. Dir., Div. of Tax'n, 31 N.J. Tax 459, 468 (Tax 2020) (emphasis added) (quoting Assemb. Judiciary Comm. Statement to S. Comm. Substitute for S. 378 (June 4, 1998)). As explained in Stanard the provision was intended to "treat[] a single member limited liability company as a sole proprietorship for purposes of the classification requirements under the GIT [Gross Income Tax] Act." Id. at 469 (emphasis added). The statute does not dictate how to treat a single-member LLC for non-income tax purposes such as determining whether there exists an employer-employee relationship for purposes of unemployment and disability contributions.

Nor does N.J.A.C. 12:16-11.2 compel a determination that the principals of the three single-member LLCs in this case should each be treated as "employees" of East Bay. Subsection (c) of that regulation states as follows:

> (c) An LLC consisting of one member shall be classified as a sole proprietorship unless the LLC elected a corporate classification for Federal income tax purposes by completing IRS Form 8832; or if the member is a corporation. In the event that the member is a corporation, and where the LLC is disregarded for Federal income tax purposes, the member shall be

considered the employer with regard to all individuals performing services for the LLC.

The provision literally concerns whether the LLC's sole member "shall be considered the employer with regard to all individuals performing services for the LLC." (Emphasis added). The provision does not address whether the LLC itself or its sole member is to be treated as the employee of another entity, such as East Bay. This interpretation is further supported by the economic impact statements accompanying the legislative history, which stated: "The proposed amendment to N.J.A.C. 12:16–11.2 will have a positive economic impact in that it will assist LLCs in remitting appropriate payments to the State on behalf of their employees." 31 N.J.R. 3037(a) (Oct. 18, 1999) (rule proposal). See also 31 N.J.R. 4284(b) (Dec. 20, 1999) (rule adoption); 29 N.J.R. 834(b) (Mar. 17, 1997) (rule proposal); 29 N.J.R. 2463(a) (May 19, 1997) (rule adoption).

Here, the parties' dispute over the three single-member LLCs is about whether those LLCs should be classified as employees of East Bay, not whether the LLCs might themselves owe contributions as an employer for any persons who might work for them.[2] The regulation is not on point here. Hence, we reject

---

[2] See also I.R.B. 2007-39 (Sept. 24, 2007) (noting that since "most states recognize disregarded entities as employers for reporting, payment, and collection of state employment taxes, [the updated IRS] regulations [concerning

the Commissioner's categorical reasoning as to the classification of the three LLCs. Instead, we must consider them, and the rest of the disputed installers, under the elements of the ABC Test.

The Commissioner's final agency decision did not set forth an installer-by-installer analysis of the ABC factors. Instead, the Commissioner discussed the facts and the ALJ's findings in generic terms, except that he provided individualized comments with respect to part C regarding five of the installers: JEC Construction, Inc., Caslo Drywall Corporation, plus the three individuals (Dan Martin, Ami Serra, and Kyle Cuevas) we have already mentioned.

With respect to parts A and B, the Commissioner rejected the ALJ's findings and concluded that East Bay had failed to meet its legal burden under those two parts. We disagree.

As to part A, we concur with the ALJ that East Bay has sufficiently shown that, on balance, East Bay did not exert sufficient control over the work of the installers to function as their employer. We incorporate by reference the ALJ's sound analysis of this part and the numerous facts he cited as indicative of a lack of sufficient control. Among other things, we find noteworthy the ability of the

---

federal employment taxes] will more closely align Federal and state reporting, payment and collection of employment taxes") (emphasis added).

installers to decline proposed projects offered by East Bay, the absence of significant direction and supervision by East Bay at the job sites, the autonomy of the installers in deciding how many workers to enlist to complete the work, and the installers' furnishing of their own tools and equipment while East Bay supplied the drywall and materials. We recognize that some facts point in the other direction, but agree with the ALJ's assessment that the circumstances here under part A bear similarity to those in Carpet Remnant.

The Commissioner's conclusion under part B is likewise legally erroneous. The drywall installations occurred at the customers' job sites, not at East Bay's offices. Faced with comparable locational facts in Carpet Remnant, the Court noted that the phrase "places of business" under part B "refers only to those locations where the enterprise has a physical plant or conducts an integral part of its business." 125 N.J. at 592. Guided by that concept, the Court held that the residences of the customers where the carpet was installed were "clearly" outside of the appellant's "places of business." Ibid. The same must be said about the locations where the drywall was installed in this case.

That brings us to part C, which concerns whether the alleged employee is "customarily engaged in an independently established trade, occupation, profession or business." N.J.S.A. 43:21-19(i)(6)(C). We agree with the

Commissioner that East Bay did not prove such independent businesses with respect to Dan Martin, Ami Serra, and Kyle Cuevas. The auditor found no evidence that they had operated as businesses; instead, by all indications they were single workers. We therefore affirm the Commissioner's classification of them as employees.

We also affirm the Commissioner's determination that East Bay failed to establish the business independence of JEC Construction and Caslo Drywall Corporation during the pertinent audit years, in which they provided services for East Bay. As the Commissioner noted, the record shows that JEC Construction, although formed as a corporation in 2011, filed no annual report in either October 2012 or October 2013, and consequently its corporate charter was revoked in May 2014. Similarly, Caslo Drywall Corporation, although formed as a corporation in May 2013, never filed a single annual report and its corporate status was revoked in May 2015. The Commissioner's conclusion that part C was not met concerning those two companies is amply supported by the record.

We part company with the Commissioner with respect to the remaining installers at issue. Each of those installers had provided certificates of insurance to East Bay, which is significant, albeit not necessarily dispositive, indicia of their independent business status under part C. The fact that each of those other

A-2467-19

companies was apparently not in business when the audit was conducted in 2017 does not mean they were inactive in the pertinent years of 2013, 2014, 2015, and 2016.[3]  The Commissioner's decision does not individually discuss those other companies and only singles out JEC Construction and Caslo Drywall Corporation.  It is not our task to fill in such gaps in the agency's determination, particularly where, as here, it conflicts with the fact-finding of the ALJ.  When an agency head strays from the factual findings of an ALJ, we need not accord the agency the high level of deference we ordinarily apply in reviewing administrative decisions.  See H.K. v. State, 184 N.J. 367, 384 (2005).

In reaching this result, we by no means endorse the use of sham corporations or LLCs created as a means to evade UCL contributions.  However, except for the two entities singled out and analyzed in the Commissioner's decision, the record in this case generally supports the ALJ's findings of bona fide entity status for the remaining companies during the pertinent audit period. Nor does the record establish that East Bay illicitly orchestrated with the installers a coordinated effort to evade UCL payment obligations.

---

[3]  Of these, only Serra Drywall was determined by the auditor to have acted as an employee in 2016.

A-2467-19

In conclusion, we affirm the Commissioner's final agency decision treating East Bay as the employer of Dan Martin, Ami Serra, Kyle Cuevas, JEC Construction, and Caslo Drywall Corporation to the extent they were found to fail part C of the ABC Test because they were not viable independent business entities. We reverse as to the remaining disputed installers. The matter is remanded to the Department for recalculation of the amount of owed UCL contributions due, in a manner consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION